CASE 59—PETITION ORDINARY—MARCH 29.

# Toney v. Harris.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1 CONSTITUTIONAL LAW—ELECTIONS—FILLING VACANCIES.—Judicial offices created by statute must be filled in the mode prescribed by the Constitution for filling those of the same class named therein. Therefore, a vacancy in the office of Judge of the Louisville Law and Equity Court must be filled in the same manner as vacancies in the office of circuit judge are directed by the Constitution to be filled.

The act of the Legislature creating the Vice-Chancellor's Court, the name of which was subsequently changed to that of the Louisville Law and Equity Court, provided for the election of a vice-chancellor

at the next general election, but further provided, however, that "*until* the next general election the vacancy existing, as well as all vacancies hereafter occurring, shall be filled by appointment by the Governor." A vacancy occurring, the Governor appointed appellee to fill it for the whole of the unexpired term, which was for more than one year. In this action by appellant, who claims to have been *elected* to fill the vacancy, to recover the office, '*Held*—That the act was intended to empower the Governor to fill the vacancies occurring, after the first election under the act, for the whole of the term unexpired when an appointment is made, and not merely until the next general election; but whether the one or the other, the act was unconstitutional, and where the unexpired term was for more than one year, the Governor had no power to make the appointment for longer than the time required by law to be fixed by proclamation for filling the vacancy by election. The appointment by the Governor was legal, however, and his appointee should be regarded as judge *de jure*, and his official acts valid until his successor is elected and qualified.

2. ONE WHO SEEKS BY SUIT TO RECOVER AN OFFICE must, as the plaintiff in every other case must do, show a legal title to that which he demands.

3. CERTIFICATE OF ELECTION.—The State Board for examining returns of elections, and not the county board, must give the certificate of election to one who has been elected judge of the Louisville Law and Equity Court, that being a "district office," although within the gift of the voters of a single county.

4. SUIT FOR RECOVERY OF OFFICE.—Neither the refusal of the State Board to give a certificate of election, nor the refusal of the Governor to give a commission to one entitled thereto, will deprive such person of the right to sue for and recover the office to which he has been elected.

5. TO MAKE AN ELECTION LEGAL, there must be a time fixed for holding such election, either by law or by the officer empowered by law to do so. Therefore, as the first Monday in August is not prescribed either by the Constitution or by statute as the day in course for holding an election to fill a vacancy in the office of judge of the circuit court, or other courts of the same class, such election can be legally held on that day only when appointed by a writ of election.

As the election under which appellant claims was held on that day without a writ of election, it was void, and conferred upon him no right to the office.

HARGIS & EASTIN FOR APPELLANT.

1. The Louisville Law and Equity Court is, for every legal and constitutional purpose, a circuit court. (Present Const. of Ky., art. 4, sec. 1;

Toney v. Harris.

Rudd v. Woolfolk, 4 Bush, 559.) Therefore, a vacancy in the office of judge of that court can be filled *by appointment*, only until an election can be had, and not for the whole of the unexpired term.

A Constitution is to be liberally construed and with a view of effectuating the intention of its framers; and the history of the times in which it was framed, and the privileges intended to be granted, must be considered. (State v. Adams, 2 Stewart, 231; Bolton *et al.* v. Albertson, 55 N. Y., 54.)

A comparison of the provisions of the present Constitution with the provisions of the Constitutions which preceded, shows that it was the intention to restrict as far as possible the filling of offices *by appointment.* (Constitution of 1792, art. 2, secs. 8 and 16; Constitution of 1799, art. 3, secs. 2 and 9; Present Constitution, art. 2, sec. 26; art. 3, secs. 9, 21, 25; art. 4, secs. 7, 15, 28, 35; art. 6, secs. 6, 7, 8 and 10; art. 7, sec. 2; art. 8, sec. 26; Speed & Worthington v. Crawford, 3 Met., 211.)

2. The act of March 26, 1872, authorized the Governor to appoint, in case of a vacancy in the office of judge of the Louisville Law and Equity Court, only until the next general election. To construe the act as giving the power to appoint for a period reaching beyond that time would render the act unconstitutional.

If possible, that construction must be placed upon a statute which will render it valid. (Cooley on Const. Limit., p. 85.)

3. Under the act of 1872 the general August election of 1886 was the time fixed for holding the election to fill the vacancy in this case, and the act of 1886 did not change the time for holding that election. (Gen. Stats., art. 6, secs. 6, 7 and 8.)

The acts of 1872 and 1886, both relating to the same subject, must be construed together under the rule of "*in pari materia.*" (Dwarris, p. 76.)

4. Proclamation and notice of an election to fill a vacancy are not essential to the validity of the election where the time for holding it is fixed by law. (McCrary on Elections, sec. 118.)

5. Where an officer has been elected by the people, pursuant to law, a commission is not necessary to enable him to recover the office.

H. L. STONE on same side.

1. The act of March 26, 1872, authorized the Governor to appoint, in case of a vacancy in the office of judge of the Louisville Law and Equity Court, only until the next *general* election; and since the first Monday in August, 1886, appellee has been an unlawful incumbent of said office.

It must be presumed that the Legislature used the term "general election" in its proper signification in the light of judicial determina-

tion. (People of North Carolina, *ex rel.*; Cloud v. Wilson, 72 N. C., 155.)

2. The construction of the ninth section of the act of 1872, contended for by appellee, would render it unconstitutional. (Debates Kentucky Constitutional Convention, pp. 151-2, and 155; Speed & Worthington v. Crawford, 3 Met., 211; State of Oregon, *ex rel.*, Whitney v. Johns, 3 Oregon, 533; Present Constitution of Ky., art. 2, sec. 8; art. 3, secs. 9 and 25; art. 4, secs. 1, 4, 13, 26 and 35; art. 6, sec. 10; Power of the Governor to Fill Vacancies by Appointment, 79 Ky., 621; Rudd v. Woolfolk, 4 Bush, 559.)

The Legislature may be prohibited from enacting laws not only by the letter but by the *spirit* of the State Constitution. (People v. Draper, 18 N. Y., 543; People *ex rel.*, Bolton *et al.* v. Albertson, 55 N. Y., 50; 1 Kent's Com., 162; Barto v. Himrod, 4 Seld., 483; Taylor v. Porter, 4 Hill, 144; Warner v. People, 2 Den., 272; People v. N. Y. C. R. R. Co., 24 N. Y., 485; Schenectady Observatory v. Allen, 42 N. Y., 404.)

If possible, a statute should be so construed as to avoid conflict with the Constitution. (Newland v. Marsh, 19 Ill., 384; Dow v. Norris, 4 N. H., 17; People v. Supervisors of Orange, 17 N. Y., 241; Clark v. Rochester, 24 Barb., 471.)

3. Proclamation and notice are not essential to the validity of an election to fill a vacancy where the time and place of holding the same are prescribed by law. (McCrary on Elections, secs. 114, 117, 135, 136, 139, 263; Dishon v. Smith, 10 Iowa, 212; Cooley's Const. Limit., 603; Carson v. McPhetridge, 15 Ind., 327; Beal v. Ray, &c., 17 Ind., 554; State, *ex rel.*, Leal v. Jones, 19 Ind., 356; People v. Cowles, 13 N. Y., 350; State, *ex rel.*, Peacock v. Orvis, 20 Wis., 235; State v. Goetze, 22 Wis., 363; Foster v. Scarff, 15 Ohio St., 532.)

4. The time and place of an election to fill a vacancy in the office of judge of the Louisville Law and Equity Court were fixed by the act of March 26, 1872, taken in connection with the general law. (Sawyer v. Haden, 1 Nev., 69; People v. Mott, 3 Cal., 505; State of Oregon v. Johns, 3 Oregon, 533; Gen. Stats., chap. 33, art. 1, sec. 1; *Ibid.*, art. 4, sec. 3; *Ibid.*, art. 6, secs. 1 and 2, subsec. 1.)

5. The act of May 15, 1886, did not change the time of the election to fill the vacancy existing in the office of judge of the Louisville Law and Equity Court from and after the first Monday in August, 1886, for the unexpired term.

6. The Governor having failed to issue his proclamation, designating the first Monday in August, 1886, as the day of election, the people's right to elect on that day was not impaired by such failure.

7. Appellant was not required by law to obtain a commission from the Governor to entitle him to the office to which he had been elected by the people. (State, *ex rel.*, Spence v. Judge of the Ninth Judicial Cir-

Toney v. Harris.

cuit, 13 Ala., 805; Warnmock v. Holloway, 2 Ala., 31; People v. Miller, 16 Mich., 56; Patterson v. Miller, &c., 2 Met., 497; Ewing v. Thompson, 43 Pa. St., 372.)

O'NEAL, JACKSON & PHELPS on same side.

1. Under the act of 1872, the Governor had power to make an appointment to fill the vacancy in the office of judge of the Louisville Law and Equity Court only until the next general election.

    This construction of the statute is in harmony with the spirit of our Constitution, and, therefore, should be adopted. (Speed & Worthington v. Crawford, 3 Met., 211; Opinion of the Judges to Gov. Blackburn, 79 Ky.)

2. The act of 1872, taken in connection with the general law, fixed the time and place of election to fill the vacancy, and, therefore, no writ of election or proclamation was necessary. (Cooley on Const. Limit., p. 759, side page 603.)

3. The act of 1886 did not change time of the election, which was fixed by the act of 1872.

    The Legislature has no power to continue in office such officers as by the provisions of the Constitution are made elective. (Clarke v. Rogers, 81 Ky., 43.)

4. A valid election gives title to the office, and no commission is necessary to enable the person elected to recover the office.

WOOLLEY & BUCKNER on same side.

Brief not in record.

A. BARNETT for appellee.

1. To entitle the plaintiff to recover he must show a complete and perfect title in himself.

2. In erecting and establishing courts, the Legislature is only confined to the limitations provided in the Constitution. The mode of filling *new* courts thus created, whether by election or appointment, is not provided for in the Constitution. The Legislature can, therefore, fill them in either mode.

    The Legislature may do any thing legislative in character and in any manner not denied to it by the Constitution. (Griswold v. Hepburn, 2 Duvall, 20 )

    The "spirit" of the Constitution can not be appealed to if the words are plain, and lead to no result inconsistent with public policy or natural justice. (Dwarris, 182-3.)

3. Our new Constitution and the Revised Statutes erected a frame of government. The Constitution vested the Governor with the power to fill vacancies, and the provisions of the Revised Statutes on the subject of "vacancies" were intended to provide for *every* possible

vacancy which might occur in any elective office. This statute is conclusive that no special election can be held except upon the call of some one regularly and specifically pointed out. (Rev. Stat., chap. 32, art. 6.)

4. In no event was the first Monday in August the proper day for holding the election for this office. The Governor should, conceding the plaintiff's contention, have issued his proclamation, when he received Judge Simrall's resignation, for an election to take place within six weeks thereafter, which falls short of August.

4. The appellant can not recover without a commission. (Gen. Stats., chap. 81, sec. 15; *Ibid.*, chap. 28, art. 7, sec. 8.)

HELM & BRUCE ON SAME SIDE.

1. The act of 1872, properly interpreted, gave the Governor the right to appoint appellee for the remainder of the unexpired term of Judge Simrall. (Gen. Stats., chap. 33, art. 6, sec. 1.)

2. The Legislature had the right to authorize the Governor to fill vacancies in the office to which appellee was appointed without respect to their duration.

The vice-chancellor's court is strictly a legislative court, and, therefore, the Legislature may provide a mode of selecting the judge who is to preside over the court. But even if the spirit of the Constitution does prohibit the filling of this office, in ·the first instance, by appointment, it does not forbid the filling of *vacancies* by appointment.

3. It is, therefore, the duty of the Governor to determine whether a vacancy exists. If he determines that none exists, his decision is final, and can not be reviewed by the judiciary. (Cooley on Const. Limit., pp. 41 and 44; High on Extraurdinary Remedies, sec. 18; Turnpike Co. v. Brown, 8 Baxter, 490; Railroad Co. v. Lowry, 61. Miss., 102; People v. Governor, 29 Mich., 320.)

4. Whenever it is the duty of any officer to fix a time and place for holding an election, no valid election can be held unless the time and place are fixed by the very officer named in the statute.

It was the duty of the Governor to issue his writ appointing a day for the election within six weeks of the notice of the vacancy, and as no writ was issued the election held was void. (Constitution, art. 4, sec. 26; Gen. Stats., chap. 33, secs. 6 and 8.)

5. Appellee holds, under his commission, as a *de jure* judge, until there has been a valid election.

BROWN, HUMPHREY AND DAVIE ON SAME SIDE.

1. Judge Harris being in possession of the office of judge of the Louisville Law and Equity Court, under a commission from the Governor, the plaintiff, Toney, must show good title to the office in himself

Toney v. Harris.

before Judge Harris' title will be inquired into. (McKune v. Weller, 11 California, 49; Lehman v. Hinton, 1 Duvall, 42, 48; Justices v. Clark, 1 Mon., 86; Justices v. Harcourt, 4 B. Mon., 501.)

2. Under the several acts relating to said court, and the proper construction placed upon them, vacancies in the office of judge of said court, at the time of the appointment of Judge Harris, were to be filled for the unexpired portion of the term by appointment by the Governor. (Public Acts 1871-2, page 66; People v. Comstock, 78 New York, 359; Blackwell on Tax Titles, 4th edition, page 700, section 38; 703, section 57; 76 Alabama, 83; Public Acts 1883-4, page 40; Blackwell on Tax Titles, 690.)

Judge Harris' appointment and commission to fill "the vacancy" meant an appointment for the entire vacancy. (General Statutes, page 384, section 1; People v. Ricks, 33 California, 503; State v. Taylor, 15 Ohio State, 117.)

3. There was no constitutional inhibition to prevent the Legislature from authorizing the Governor to fill vacancies in the office of judge of said statutory court, by appointment, for the residue of the unexpired term. (Johnson v. Higgins, 3 Met., 574-575; Speed & Worthington v. Crawford, 3 Met., 211; Kentucky Constitution, in General Statutes, page 100, section 21; page 111, section 2; page 101, section 25; page 111, section 10; page 102, section 1; page 114, section 17; Griswold v. Hepburn, 2 Duvall, 20; Constit., page 99, section 9; page 103, section 2; page 105, section 15; page 106, section 26; page 108, section 35; page 116, section 26; page 111, section 8; page 111, section 7; Loran v Webb, 82 Ky.; People v. Wilson, 72 N. Car., 155.)

The contemporaneous and continuous construction put upon the Constitution has been that vacancies may be filled by appointment. (Collins v. Henderson, 11 Bush, 92-93; Barbour v. City of Louisville, 7 Ky. Law Reporter, 21; Const., page 115, section 22; *Revised* Statutes, vol. 1, pages 234, 235, 307, 461; vol. 2, pages 143, 85, 212, 543, 40; General Statutes, 277, 187, 407 842, 847, 643, 676, 692, 203, 578, 572, 617, 724, 279, 778, 402, 691, 753, 560, 975, 1020, 814, 393, 455, 145; Public Acts, 1882, page 68; Public Acts. 1884, page 147; Public Acts, 1870, page 77; Public Acts, 1878, page 59; Speed v. Crawford, 3 Met., 211; Offut v. Com., 10 Bush, 214; Hoke v. Field, 10 Bush, 145; Police v. Louisville, 3 Bush, 604; Const. of 1799, General Statutes, page 79, section 1; Const., page 122, section 28; People v. Fisher, 24 Wendell, 220; Brody v. Campbell, 17 Cal., 21; McKune v. Weller, 11 Cal., 66; State v. McClintock, 1 McCord, 250; People v. Nelson, 72 N. Car., 161; People v. Osborne, 7 Colorado, 605.)

This is not a "circuit court," in the meaning of article 4, section 26, of the *Constitution.* (Const. in General Statutes, page 106, section 26; Rudd v. Woolfolk, 4 Bush, 559; Pope v. Auditor, 79 Kentucky, 309; Smith v. Cochran, 7 Bush, 150; Constitution, page 102, section

Toney v. Harris.

1; page 105, section 16; page 105, section 19; page 105, section 20; page 106, section 24; Loran v. Webb, 82 Kentucky, page —; Crapsey v. Henderson, 63 Indiana, 271; Ex Parte Wiley, 39 Indiana, 547; General Statutes, page 247, section 28; page 244, section 1.)

If one Legislature creates an office with too long a term, or makes the office or vacancies appointive, when the people prefer them elective, the remedy is for the next Legislature to repeal or change it. (Standeford v. Wingate, 2 Duvall, 440; Tesh v. Commonwealth, 4 Dana, 523.)

4. Even if the Constitution had required the "regular" terms of judges of such courts to be filled by election, the Legislature in creating them could legally provide that "vacancies" should be filled by appointment by the Governor. (Constitution, page 99. section 9; State v. Crow, 20 Arkansas, 209; Sprague v. Brown, 40 Wisconsin, 618.)

5. Even if an election had been necessary, the alleged election of appellant Toney to said office was not a valid election; because it was unofficial, and because there was no proclamation by the Governor giving official and authentic notice of the fact of the vacancy, or "appointing" officially and authentically the "day" when an election should be held to fill such vacancy. (McCrary on Elections, section 109; Sawyer v. Hayden, 1 Nevada, 75; McKune v. Weller, 11 Cal., 49; General Statutes, pages 384, 385, subsections 1. 2, 3. 6, 7, 8; General Statutes, page 247, section 28; Civil Code, page 151, subsection 14; Crapsey v. Henderson, 63 Ind., 271, Ex Parte Wiley, 39 Ind., 547; Public Acts of 1886, page 111; Act of May 15, 1886; Cooley's Constitutional Limitations, fifth edition. 758; McCreary on Elections, section 138; Bigelow's Overruled Cases, 376, 375, 472; People v. Thompson, 67 Cal., 628; Dillon's Municipal Corporations, third edition, section 194; McCreary on Elections. sections 114, 120, 121, 127, 135, 137; Haddox v. Clark, 79 Va., 677; Scarf v. Foster, 15 Ohio State, 532; McKune v. Weller. 11 Cal., 49; Kennedy v. Irwin, 52 Cal., 165; People v. Mathison, 47 Cal., 446; Commonwealth v. Baxter, 35 Pa. State, 264; Junker v. Commonwealth, 20 Pa. State, 493; Barry v. Lauck, 5 Coldwell Tenn., 588; People v. Witherell, 14 Mich., 48; State v. Young, 4 Iowa, 561; Stevens v. People, 89 Ills., 337; State v. Goetze, 22 Wis., 368; People v. Rosebro, 14 Cal., 180; State v. Jenkins, 43 Mo., 261; Jones v. State, 1 Kan., 277; Sawyer v. Haden, 1 Nev., 75; State v Buck, 13 Neb., 278; Beal v. Ray, 17 Ind., 557; Dumesnil v. City of Louisville. 4 Ky. Law Reporter, 14; Stockholders, L., C. & L. R. R., 12 Bush, 62.)

6. The appellant Toney holds no "commission" as judge, and therefore is not entitled to possession of said office. (Gen. Stat., page 684, sections 15, 16; page 394, section 2; page 287, sections 2 and 3 of article 7; Const., page 106, section 23; McGruder v. Tuck, 25. Maryland,

Toney v. Harris.

217; Newcum v. Kirtly, 13 Ben. Mon., 519; Brodie v. Campbell, 17 California, 20; 1 Monroe, 84.)

7. The questions as to whether, under a proper construction of the Constitution and laws of the State, there was a vacancy in said office; and if so, for what period of time; and whether it was to be filled by appointment, or whether there should be a proclamation issued calling an election to fill it; and if so, at what date; were political questions confided by the Constitution and laws to the care and decision of the executive department of the State; and the executive having decided that it would be unlawful to issue such proclamation or call such election, the decision of that department will not be revised by the judicial department. (Constitution, article 1 section 1, page 90; page 98, section 1; page 99, section 14; page 99, section 9; Taylor v. Comm., 3 J. J. Mar., 401; Hawkins v. Governor, 1 Ark., 570; Hill v. State, 1 Ala., 561; Gen. Stat., page 385, section 8; Cooley's Const. Lim., 51, 52, 53; Martin v. Mott, 12 Wheaton, 31; Marbury v. Madison, 1 Cranch, 137; State v. Johnson, 4 Wallace, 497; Georgia v. Stanton, 6 Wallace, 74; People v. Governor, 19 Illinois, 232; State v. Governor, 22 La. Ann., 5; State v. Dougherty, 25 La. Ann., 120; Com. v. Governor, 85 Pa. St., 433; Wilcox v. People, 90 Ill., 205; Att'y-Gen. v. Governor, 8 Rh. Is., 192; Turnpike Co. v. Governor, 8 Baxter, 490; Vicksburg v. Governor, 61 Miss., 102; People v. Governor, 29 Mich., 320; 17 Florida, 67; 8 Georgia, 360; 32 Maine, 508; 39 Mo., 388; 1 Dutcher, 331; 24 Texas, 317; 1 Wis., 522; 41 Ala., 197.)

8. Judge Harris, having been appointed and commissioned by the Governor as judge of said court for the period of the vacancy, is entitled to hold said office, as the lawful incumbant thereof, until a duly elected successor shall have become lawfully entitled to the possession thereof. (Constitution, page 99, section 9; State v. Howe, 25 Ohio State, 595, 596; Stratton v. Oulton, 28 California, 44; Weir v. Bush, 4 Littell, 433; State v. Wells, 8 Nevada, 105; Hubbard v. Crawford, 19 Kansas, 570.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant instituted this action to prevent an alleged usurpation by appellee of the office of judge of the Louisville Law and Equity Court, and to recover of him the possession thereof, the petition and amended petition, to which a general demurrer was sustained, containing substantially the following statement of facts:

That J. G. Simrall was, on the first Monday in August, 1884, elected to that office for the full term of six years, but having resigned, appellee was by the Governor appointed January 1, 1886, to fill the vacancy thus created until the general election on the first Monday in August of that year, and, thereupon, entered upon the duties of the office, and still claims the right to hold it. That, at the general election held at the last-named date, appellant was a candidate for election by the voters of Jefferson county, including the city of Louisville, to said office for the residue of the term, and his candidacy, as well as the fact there would be an election for that office then held, was fully advertised in the newspapers of the county, and by cards and posters. That the qualified voters of said county took notice of the law requiring such election to be held, and had actual notice it would be held, and voted for appellant as a candidate for said office, their votes being regularly recorded in the several poll-books used at said election. That, in due time thereafter, the county board appointed by law to examine the poll-books and ascertain the correctness of the summing up of votes, made out certificates of the number of votes given in that county for appellant for that office, he being the only candidate, which show that he received 18,580, and that none were given to any other person. That one of said certificates was transmitted to the Secretary of State at the seat of government. But the board for examining returns of elections for State and district officers, composed of the Governor, Attorney-General and Auditor, refused to make out and deliver to appellant a certificate of his election to said office, upon the ground,

stated in a written communication filed with the petition, that the office in question is exclusively within the gift of the voters of Jefferson county, and, consequently, the county board of examiners is alone authorized to give a certificate of election in such case.

It is further stated that, subsequently, he received a certificate of election from the county board, and, thereupon, qualified, and demanded of appellee the possession of the office, which he refused to surrender, and yet wrongfully and illegally withholds from appellant.

In an amended petition it is stated that the Governor, although actually informed more than six weeks prior to the first Monday in August, 1886, that a vacancy existed in said office, refused to issue a proclamation for an election on that day to fill such vacancy, and the sheriff of the county, by reason thereof, did not give official notice that an election for that purpose would be then held. It is further stated that appellant requested the Governor to issue to him a commission as judge of said court for the remainder of the regular term, but he refused to do so.

The special relief prayed for is judgment against appellee for the surrender to appellant of the office, together with the books, records, franchise and emoluments appertaining thereto. And the final judgment of the lower court was, that the action be dismissed, and for the recovery by appellee of his costs.

The two sections of the Civil Code applicable to this case are as follows:

"Sec. 483. If a person usurp an office or franchise, the person entitled thereto, or the Commonwealth, may prevent the usurpation by an ordinary action."

"Sec. 487. A person adjudged to have usurped an office or franchise shall be deprived thereof by the judgment of the court, and the person adjudged entitled thereto shall be placed in possession thereof ; but no one shall be entitled thereto unless the action be instituted by him," etc.

The attitude of appellant being that of plaintiff, to recover "he must, as the plaintiff in every other case must do, show a legal title to that which he demands." (Justices v. Clark, 1 Mon., 82.) And the question directly presented to us by this appeal is whether, assuming the facts stated by him to be true, he is entitled to the office. But, to decide that question, it becomes necessary to ascertain the true meaning of certain provisions of the statutes relating to the office, about which the parties differ, and, if construed as it is contended on behalf of appellee they should be, to also decide as to their validity. Hence, whether the case be determined one way or the other, we will have to indicate our views in regard to appellee's title to the office, and it is proper to state his counsel have requested that we do so.

The commission filed with the petition shows that appellee was appointed by the Governor for the residue of the term of six years, and not, as alleged by appellant, until the August election in 1886.

Appellant admits that he has neither a certificate of election from the State board, which, we think, is alone empowered to give it, nor a commission from the Governor. And whether the possession of either is indispensable to enable him to maintain this action, we will now consider.

The first was refused under a misconception, as it seems to us, of the statute.

It is true section 2, article 5, chapter 33, General Statutes, provides that the county board for examining poll-books shall give a certificate of election of the person who has received at an election the highest number of votes for an office exclusively within the gift of the voters of the county. But manifestly that provision was intended to apply only to what are treated in the Constitution and statutes as county offices, and not to what is called a district office, that it generally requires the voters of two or more counties to fill. This is made clear by section 6 of the same article, which makes it the duty of the State board to give certificates of the election of judges of the circuit court, considered in connection with section 28, chapter 28, which requires "a circuit court" to be construed to mean any court of similar jurisdiction, either criminal, ordinary or equitable.

But we do not think the refusal of the State board to give the certificate should defeat appellant's recovery; for the essential fact that he received the highest number of votes given for the office has been duly ascertained by the board, whose duty it is to examine the poll-books and sum up the votes.

The commission was refused by the Governor upon the ground, stated by him in a communication filed with the petition, that there was not a legal election for judge of the Louisville Law and Equity Court on the first Monday in August, 1886, because no vacancy existed in that office to be then filled by election. And it is now contended, that as appellant had no commission as judge of the court when he demanded possession of the office, he is not entitled to sue for and recover it.

vol. 85—30.

The power and duty of the judiciary to decide upon the validity of an act of the Governor, as well as of a law of the General Assembly, when involved in the determination of a controversy properly before a court for adjudication, necessarily results from the division of the powers of the government into three distinct departments, and has frequently been exercised by this court in cases similar to this.

In the cases of Justices v. Clark, 1 Mon.; 82, Bruce v. Fox, 1 Dana, 447, and Page v. Hardin, 8 B. M., 648. the decision of the Governor that a vacancy in office existed, and his act in attempting to fill it, were directly before this court for revision, and in each one it was decided no vacancy existed, his act was invalid, and the person appointed by him was not entitled to the office.

In the last named case the relative powers and duties of the two departments are defined in the following language : " When by the Constitution or the law the Governor has a discretionary power, or when on any ground his act is made conclusive as to all rights involved, it is of course not within the province of a court to inquire into the propriety or impropriety of his act. Such a power controls all rights which it may affect, and a properly authenticated act done in pursuance of it, cannot be questioned, for the reason there can be no legal right coming in conflict with it. Rights dependent upon a discretionary power cannot exist in opposition to it, but terminate at its will. The question, however, whether there is such a power in a given case, or whether any particular act or power is of the character referred to, is a judicial question whenever the right in litigation before a judicial tribunal depends

upon it, and requires its decision.   If any office be held
at the will of the Governor, the appointee could not
complain of the violation of any legal right by the rev-
ocation of his appointment, however sudden or ground-
less.   But if the Governor were to attempt to displace
any officer at his mere will, he might undoubtedly make
the question in a legal contest with a proper party,
whether the Governor had such power, and whether his
right to the office was terminated.   The question of
right on his part, and of power on the part of the Gov-
ernor, would be the same.   And as he might unquestion-
ably assert his right by appropriate legal remedy, the
question of power would necessarily be brought within
the cognizance of the court.   And so any power claimed
or exercised by the Governor may be brought in ques-
tion before a judicial tribunal, if it be relied on and
material, either in opposition to any right asserted by
legal remedy or in support of it.

"Such we understand to be the operation of the
judicial power and the law in the protection of indi-
vidual rights under a constitutional government.   The
judiciary pretends to no direct control over the action of
the Legislature or the supreme executive.   But it may
decide upon the validity of the acts of either affecting
private rights.   And, by a writ of *mandamus*, it may
coerce a ministerial office, though of the executive de-
partment, to the performance of legal duty for the effect-
uation of a legal right.   It must decide all questions
essential to a determination of the rights of the parties
in a judicial proceeding coming properly before it."

The plaintiff in that case was the Secretary of State,
whom the Governor had attempted to remove from

office, and the defendant was the Auditor. But the
decisive question was one of right on the part of the
plaintiff, and of power on the part of the Governor.
There his act, which this court decided invalid, was, as
it is here, in opposition to a right "asserted by legal
remedy."

But if the position of counsel be correct, it results
that, although the decision of the Governor upon the
legality of an election is not, nor can be, under our form
of government, conclusive against the right of a person
claiming an office in virtue of such election, still he
may, by withholding the commission, not only deprive
the claimant of it, but prevent any inquiry or determi-
nation by a judicial tribunal as to his title.

Section 15, chapter 81, General Statutes, provides
that the officers named therein, including judges of the
circuit, criminal and common pleas courts, chancellors
and vice-chancellors, shall have commissions issued to
them by the Governor. But it was not intended thereby
that the possession of a commission should be a con-
dition of the right to maintain an action for any such
office.

Section 2, article 11, chapter 33, provides that each
officer elective by the voters of a judicial district,
"shall enter upon the discharge of the duties of his
office after the commencement of his term, as soon as
he receives his commission."

If the decision by this court should be in favor of ap-
pellant, it would be regularly followed by a judgment
placing him in possession of the office, and depriv-
ing appellee of it, which judgment the court would
unquestionably have the power to enforce. But whether

appellant could then, according to a fair construction of the last named section, enter upon the discharge of the duties of the office, without having received the commission, is a question it is improper to discuss, because we are not permitted to presume that the Governor, whose duty it is to take care that the laws be faithfully executed, would, in such a case, leave the law creating the office in question suspended.

We will now proceed to the discussion of the validity of, and construction to be given to, the act of March 26, 1872, creating the vice-chancellor's court, the name of which was subsequently changed to that of the Louisville Law and Equity Court, and the amendatory act of May 15, 1886.

The first and ninth sections of the act of 1872, the only two necessary to quote, are as follows:

"Section 1. There shall be elected at the next general election of the qualified voters of Jefferson county, and every six years thereafter, a vice-chancellor of the Louisville Chancery Court, who shall hold his office for the term of six years, and shall receive the same compensation and have the same qualifications as the chancellor of said court."

"Section 9. This act shall take effect and be in force from and after its passage; *and until the next general election the vacancy existing, as well as all vacancies hereafter occurring, shall be filled by appointment by the Governor.*"

The act of May 15, 1886, is as follows: "An act providing for filling vacancies that have or may hereafter occur in the office of judge of the Louisville Law and Equity Court.

" Section 1. That vacancies in the office of judge of the Louisville Law and Equity Court shall be filled at the same time, and for the same period, of vacanies, and in like manner, and on like occasions, as vacancies · in the office of the Jefferson circuit court.

" Section 2. *But this act shall not apply to, or in any manner affect, the term of the present incumbent of said office of judge of the Louisville Law and Equity Court.*

" Section 3. This act shall take effect from and after its passage."

It is argued for appellant it was intended by section 9 of the act of 1872, that in case of a vacancy in the office occurring at any time after the first Monday in August, of that year, when the first election under the act was held, it should be filled for the residue of the regular term unexpired by an election at the general election in August next thereafter, and that the Governor has no power to fill a vacancy for a period extending beyond a general election; and that the object and effect of section 2, of the act of May 15, 1886, was to leave the act of 1872 thus construed in force until the first Monday in August, 1886, at which time an election to fill the vacancy for the residue of the term was duly held, and appellant was legally elected.

On the other hand, it is contended for appellee that, by section 9 of the act of 1872, the Governor was empowered to appoint and commission appellee to fill the vacancy caused by the resignation of Judge Simrall, for the whole of the unexpired term of six years, which he did do January 1, 1886. And that the meaning and object of the proviso contained in section 2 of the act

of May 15, 1886, was to leave the right of appellee to the office thus defined unaffected.

The latter clause of section 9 is somewhat awkwardly drawn, but, in our opinion, the construction of appellee is the correct one.

The words "until the next general election," connected by the conjunction "and" with the preceding clause declaring when the act should take effect, we think relate to a particular period of time, beginning at the passage of the act and ending at the next or nearest general election thereto, during which it was the intention, "the vacancy existing" by operation of the act itself, should be filled by appointment. To make them apply to vacancies occurring after the termination of that period requires not only a transposition of the words of the sentence, but the substitution of "*each*" or "*any* vacancy" for "*all* vacancies."

It therefore follows that the length of time for which the Governor is empowered by that section to fill the vacancies occurring after the first election under the act is the whole of the term unexpired when an appointment is made. Such is the natural import of the language in reference to such vacancies, unaccompanied, as we think it is, by any qualifying words. And as the section manifestly was not intended to be construed in connection with, nor made subservient to, the provisions of the Constitution and existing statutes relating to the circuit and Louisville chancery court, such must be regarded as its meaning.

The act was thus construed by the predecessor of the present Governor, who made an appointment to fill a vacancy in the office for two years, the legality of which

the Legislature by an act passed in 1884, continuing the
appointee in office to the end of the regular term, seems
to have recognized. And section 1 of the act of May
15, 1886, we think, shows the same legislative construc-
tion.

It is, however, argued by counsel of appellant, that
such a construction renders so much of the act as
relates to filling vacancies unconstitutional, and the
court should, therefore, if possible, so construe section
9 as to make it harmonize with the Constitution.

If a statute be fairly susceptible of two constructions,
that one in harmony, rather than the one in conflict
with the Constitution, should be adopted. And if there
be a reasonable doubt on the subject of the validity of
a statute, it is the duty of the court to hold it to be
constitutional. But a court is never justified in per-
verting the true meaning of a statute to avoid deciding
upon its constitutionality, nor for any other purpose.

It seems to us, however, that the application of the
rule would not benefit appellant more than appellee,
because if section 9 be construed either way contended
for, it is liable to the same objection.

Section 1, article 4, of the Constitution, is as follows:

"The judicial power of this Commonwealth, both
as to matters of law and equity, shall be vested in one
supreme court, to be styled the Court of Appeals, the
courts established by this Constitution, and such courts
inferior to the supreme court as the General Assembly
may, from time to time, erect and establish."

There being no express provision in the Constitution
in regard to either the manner of selecting or the quali-
fications of judges of the courts authorized by that sec-

tion to be erected and established, nor as to the mode·
of filling vacancies in such offices, the question arises.
whether as to any, or either of these matters, there are
implied limitations and conditions of the exercise of
the power by the General Assembly. For if so, they
are as obligatory as if they had been expressed.

For the sure and true interpretation of the organic
as well as a statute law, it is useful to look to the occa-
sion and necessity of the law, the mischief felt and the
remedy had in view. "And then the office of all the·
judges is always to make such construction as shall·
suppress the mischief, advance the remedy, and to sup-
press subtle inventions and evasions for continuance of
the mischief, and *pro privato commodo*, and to add
force and life to the cure and remedy according to the
true intent of the makers *pro bono publico*."

It seems to us that it is only necessary to look at
the radical and complete change made by the present
Constitution in the tenure and mode of filling offices,
from the former system, to be convinced that it was the
intention of its framers, who but obeyed the sovereign
will, that all judicial offices, from the highest to the
lowest grade, whether expressly named therein or
thereafter to be erected and established by the General
Assembly, should be filled by election by the people,
and in no other way.

In Speed, &c., v. Crawford, 3 Met., 207, decided in
1860, is the following language: "To curtail the power
of appointment to office 'by the Executive, and to ex-
tend the elective · principle, was one of the leading
objects of the authors of the Constitution. This pur-
pose was not more distinctly manifested in the expres-

sion of public sentiment which led to the call of the
convention, than it has been in the provisions of the
instrument itself.    *    The great object in the change of
the system was to refer to the people the choice of their
officers of all grades and classes, whether State, dis-
trict, county, city or town offices.  That choice was to
be made through the instrumentality of an election."

To except from the application of the elective prin-
ciple judicial offices which the General Assembly is
authorized to erect and establish, would destroy the
consistency and harmony of the Constitution, and to
that extent defeat what was manifestly a controlling
object of its adoption, and we are, therefore, bound to
conclude, if so intended it would have been plainly
indicated.  The only exception or even modification to
be found, and inferentially the only one intended, is in
section 10, article 6, which does not relate at all to judi-
cial offices.  That section is as follows : "The General
Assembly may provide for the election or appointment,
for a term not exceeding four years, of such other
county or district, *ministerial* and *executive* offices, as
shall, from time to time, be necessary and proper."

But it is useless to argue farther to prove what is so
plain, and has been so universally accepted as true
since the formation of the Constitution.

If, then, judicial offices created by statute must be
filled in the mode prescribed by the Constitution for
filling those named therein, it would seem to follow
that by it, and not by statute law, are the qualifica-
tions of the officers to be determined.  Otherwise,
there might exist different qualifications for judges
of courts having the same general jurisdiction, or the

anomaly be presented of higher qualifications being prescribed for a judge of the circuit court than for the judge of a statutory court of superior jurisdiction. For the courts which the General Assembly may by section 1, article 4, establish, are not required to be of less or even the same jurisdiction as the circuit court, but inferior only to the Court of Appeals. And the Legislature under that section established the Superior Court, and invested it with jurisdiction of appeals from judgments of the circuit court.

By what rule, then, are the qualifications of judges of statutory courts to be determined?

In Rudd v. Woolfolk, 4 Bush, 355, the principal question involved was as to the construction of section 28, article 4, of the Constitution, which is as follows:

"The General Assembly shall provide by law for holding circuit courts when, from any cause, the judge shall fail to attend, or, if in attendance, can not preside."

And this court said: "The circuit courts being of general, common law, equity and criminal jurisdiction, all the statutory courts having general jurisdiction of either of these branches may be said to be carved out of it, and, therefore, substantially and for every legal and constitutional purpose circuit courts, whatever may be their designation by name or cognomen. * * Looking at the evils to be remedied and the objects in view, we can hardly suppose the convention attached more importance to the name than the jurisdiction of the court. Therefore, we construe the meaning of this clause of the Constitution as con-

ferring power to provide by law for the election of special judges for any court carved out of the jurisdiction of the circuit court, because *pro tanto* it is a circuit court, although called by another name."

A person to be eligible, under the Constitution, as judge of the circuit and Louisville Chancery Court, must be a resident of the district in which he is elected two years next preceding his election, at least thirty years of age, and have been a practicing lawyer eight years. But he may be eligible to the office of judge of the county, city or police court, or as justice of the peace, without any previous practice or experience as a lawyer, if he is over twenty-one years of age, and shall have been a resident in the county or district in which he is chosen one year next preceding his election.

It is, therefore, clear it was not intended to give to the General Assembly the power to prescribe the qualifications of the judge of a statutory court having the same general jurisdiction as the circuit court, but that they should be regulated by the provision of the Constitution applicable to the latter; and such has been the uniform legislative construction since the establishment of the first statutory court in 1865.

If, then, in harmony with the obvious design and general structure of the Constitution, judges of such courts must be elected, and belonging to the same class, erected for the same purpose, and invested with the same dignity and power, must have the same qualifications as a judge of the circuit court, the logical conclusion is that vacancies being equally within the reason of the Constitution, must be regarded as likewise

within the Constitution itself, and, therefore, intended to be filled in the same manner as vacancies in the office of circuit judge are directed to be filled.

Section 26, article 4, is as follows: " If a vacancy shall occur in the office of judge of the circuit court, the Governor shall issue a writ of election to fill such vacancy for the residue of the term: *Provided*, That if the unexpired term be less than one year, the Governor shall appoint a judge to fill such vacancy."

The same provision is made as to a vacancy in the office of judge of the Court of Appeals. And at the first session of the General Assembly after the adoption of the Constitution, it was enacted that the day appointed for filling a vacancy in the Court of Appeals or in a circuit court, shall be within six weeks after the Governor receives notice of a vacancy, except that when a vacancy occurs there is not time to give the requisite notice before the proper first Monday in August, a special election shall be ordered to take place on a day within six weeks after such Monday, and such is now the law.

But in case of every other judicial office named in the Constitution, except the Louisville Chancery Court, the power to provide by statute the mode of filling vacancies is given to the General Assembly.

It seems to us unreasonable that the framers of the Constitution ever intended the Legislature to have, or contemplated it would attempt to exercise, any more discretion as to the mode of selecting or qualifications of judges of such courts, or as to filling vacancies, than is given in respect to the circuit court. To contend they did is to assume that while explicitly providing

that judges of the circuit court should be elected by the people, they intended to give to the Legislature discretionary power as to the mode of selecting judges of statutory courts of equal dignity and importance. While it was regarded essential to prescribe as qualifications a certain age, knowledge and experience in the practice of law for a circuit judge, power was purposely given to the Legislature to dispense with such qualifications as to judges of statutory courts, upon whom might be imposed precisely the same duties; and while it was deemed necessary to provide for promptly and speedily filling vacancies in the office of circuit judge by election, such vacancies in the office of judges of other courts of the same class were left to be filled by appointment for the residue of the term unexpired, without regard to the length of time.

In our opinion, the power attempted to be conferred on the Governor by section 9 of the act of 1872, is a plain evasion of the true intent and meaning of the Constitution, and cannot be sanctioned as a precedent without marring the design, defeating the purpose, and violating the fundamental principles of the Constitution. For if it may, in this instance, be violated upon the ground of the inconvenience of popular elections, other and repeated encroachments may be expected to follow.

If we are correct in these views, it results that section 2 of the act of 1886 is likewise invalid. And as the first section of that statute is but a mere re-enactment of the provisions of the General Statutes on the subject of filling vacancies in the office of circuit judge, alike applicable to the office of judge of the Louisville

Law and Equity Court, it follows that, neither before nor after the passage of that act, could the vacancy we are considering be filled at any other time than that fixed in the proclamation or writ of election issued by the Governor, and that an election for that purpose cannot be legally held at all without such proclamation.

To make the election of an officer of government legal, there must be a time fixed for holding such election, either by law or by the officer empowered by law to do so. If it was not so, there could be neither a fair, orderly or free expression of the popular choice.

If one candidate for an office and his friends may, without authority of law, prescribe the time for holding an election to fill a vacancy, his opponent may as well fix another and different time. For neither by the Constitution nor statute is the first Monday in August prescribed as the day in course for holding an election to fill a vacancy in the office of judge of the circuit or other courts of the same class, and such election, therefore, can be legally held on that day only when appointed by a writ of election.

To sanction an election held without lawful authority is to countenance confusion, tumult and unfairness. A proposition so plain needs no citation of authority to support it.

We are, therefore, of the opinion that the facts stated by him in his petition do not show in appellant a legal title to the office.

Having incidentally, yet necessarily, expressed our views as to the title of appellee to the office, it is proper to add that, in our opinion, his appointment

by the Governor was, under section 9, article 3 of the Constitution, legal. And though the Governor had no power to make the appointment for the whole of the unexpired term, nor under that section longer than the time required by law to be fixed by proclamation for filling the vacancy by election, appellee should be held and regarded as judge *de jure*, and his official acts valid until his successor is elected and qualified.

Judgment affirmed.