CASE 26—PETITION FOR MANDAMUS—MARCH 19.

97    145
125    412

# Board of Trustees of Augusta v. Maysville, &c R. Co.

### APPEAL FROM BRACKEN CIRCUIT COURT.

1. TITLE OF ACT.—An act of the legislature providing that the council of the city of Augusta may issue bonds of the city to a certain amount in aid of any railway company that will construct a railroad through the city, provided a majority of the voters of the city shall vote in favor thereof at an election held for that purpose, relates to the powers and duties of the governing body of the city, and the subject is sufficiently expressed by the title: "An act to amend the charter of the city of Augusta."

2. ISSUAL OF BONDS BY CITY IN AID OF RAILROAD COMPANY.—Where pursuant to such an act a favorable vote has been had under an ordinance providing that the bonds are not to issue until the road is built, that condition having been complied with the company is entitled to the bonds without any further contract or subscription upon the part of the city, and the city has no discretion in the matter. The words "may issue bonds," as used in the act, are to be regarded as compulsory and not as permissive merely.

3. SAME.—When a public power for the public benefit is conferred in enabling terms a duty is impliedly imposed to exercise it whenever the occasion arises.

4. SAME.—In determining whether the company has complied with a condition of the ordinance that the road should be completed within two years, excepting such delays as might be caused by "floods," the company is entitled to have deducted the time during which it was prevented by "high water" from making any progress, whether or not the water reached the height it had reached in noted floods.

5. NOTICE OF ELECTION.—Where the law fixes the time for holding an election the notice otherwise required to be given may be dispensed with.

GEORGE DONIPHAN AND R. K. SMITH FOR APPELLANTS.

1. The act pleaded in the petition authorizing the vote and the issual of the bonds is unconstitutional because the title is delusive.

Vol. 97.—10.

Acts 1883-84, vol. 1, pp. 1270, 1271; Acts 1849-50, p. 183, et seq.: Acts 1876, vol. 1, p. 424, ct seq.)

2. The petition is subject to demurrer because it does not set out any call or notice of the election. The enabling act of the General Assembly does not prescribe the time, manner or place of holding the election, or the kind of notice to be given. This then leaves the city council bound by the manner of holding elections generally for the city, and the same notice must be given as provided by the charter, which requires notice of thirty days. (Acts 1876, vol. 1, p. 425, sec. 6; Beach on Railways, p. 234, sec. 206; State v. Young, 4 Iowa, 561.)

3. The petition is defective because it does not show any contract, donation or subscription on the part of the city, or any acceptance by the plaintiff, railway company, or any one for it. The note does not constitute a valid subscription, nor does it constitute a contract of any kind. Some further action must be taken by the council. (Dillon's Mun. Corp., vol. 1, sec. 538; Beach on Railways, vol. 1, sec. 218; Cumberland & Ohio R. Co. v. Barren Co., 10 Bush, 604; Aspinwall v. Comm'rs of County of Daveiss, 22 How., 364; Covington & Lexington R. Co. v. Kenton County Court, 12 B. Mon., 144; Town of Concord v. Portsmouth Savings Bank, 92 U. S., 629; County of Bates v. Winter, 97 U. S., 89; Nugent v. The Supervisors, &c., 19 Wall., 241; County of Moultrie v. Savings Bank, 92 U. S., 631.)

4. The use of the word "may" was intended to give the council a discretion. (14 Am. & Eng. Enc. of Law, p. 979, ct seq.)

5. Under the ordinance of May 1, 1886, the railway company was to do several things as conditions precedent. Whether or not these conditions have been performed is to be determined by the municipal authorities themselves; they can not delegate that duty to others. And their judgment is final. (15 Am. & Eng. Enc. of Law, p. 1274; Jackson Co. v. Brush, 77 Ill.; Mut. Ben. Life Ins. Co., v. Elizabeth, 42 N. J. L., 235; Knox County v. Nichols, 14 Ohio St., 260; People ex rel v. The County Board of Cass County, 77 Ill., 438; People v. County of Tazewell, 22 Ill., 147; 1 Ohio St., 14.)

6. The court erred in refusing to permit appellants to prove that there had been no "floods" within the period within which the railroad was to have been completed. There is a distinction between "floods" and "high water."

A. M. J. COCHRAN FOR APPELLEES.

1. Where the enabling act makes it the duty of the governing board to make a subscription or other contract for aid payable in bonds

or money, and prescribes a vote as a condition precedent to the obligation to perform the duty, upon the taking of the vote the railroad company has an enforceable right by reason of the vote itself, and before any subscription or contract has been made. (Livingston Co. v. Portsmouth Bank, 128 U. S., 102; Allison, &c., v. L., H. C. & W. Ry. Co., 10 Bush, 1.)

The enabling act in question here imposed upon the Mayor and Board of Councilmen the duty to make a subscription upon a favorable vote, and did not leave them any discretion. The word "may" was used in the sense of "shall" or "must." (Endlich on Int. of Statutes, secs. 310, 311, 312, 314.)

2. While it was not necessary there should be a subscription or other contract between the city of Augusta and the railroad company in order to entitle it to the aid sued for herein, yet, as a matter of fact, there was such a subscription or contract. (Langdell on Contracts, p. 1; County of Bates v. Winter, 97 U. S., 89; Nugent v. Supervisors, 19 Wall., 241; County of Moultrie v. Savings Bank, 92 U. S., 631; Trustees of Clark Co. v. Paris, &c., 11 B. M., 143.)

3. The subject of the act is sufficiently expressed in the title. (Phillips v. Cov. & Cin. Bridge Co., 2 Met. 219.)

4. The ordinance providing for the election was a calling of the election, and no notice was necessary. (Doores v. Varnon, 28 S. W. Rep., 853.)

5. The delay in the construction of the road was caused by "floods" within the meaning of the act. (Endlich on Int. of Statutes, sec. 28.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The appellant Board on May 1, 1886, ordered an election by the qualified voters of the city of Augusta, to be held on May 15th thereafter, for the purpose of ascertaining the will of the people in regard to the issual of the bonds of the city for the sum of four thousand dollars, in aid of procuring the right-of-way for the appellee company in constructing its railroad.

The ordinance provides that the bonds shall not be issued or delivered to the company "until the Maysville & Big Sandy Railroad is completed as a standard gauge road, and is equipped with rolling stock of locomotives, coaches, etc.,

Board of Trustees of Augusta v. Maysville, &c R. Co.

and a train has passed over the road from Ashland, Boyd county, Kentucky, through Augusta, Kentucky, to Covington, Kenton county, Kentucky."

And further, that the company would "cause to be issued to the city certificates of stock in said Maysville and Big Sandy Railroad to the amount of four thousand dollars in shares as the railroad charter specifies," etc.

And moreover, "that if the vote of the city is in favor of the issue of said bonds, it will be of no binding force upon the city, if the railway is not constructed and equipped within two years from the date the vote is taken, excepting such time as may be lost by cause of floods."

In pursuance of the provisions of the ordinance the election was held under the supervision of the officers appointed by the board, the vote resulting largely in favor of the issual of the bonds. Thereupon, the road was completed and equipped as required by the terms of the ordinance, and on or about January 1, 1889, ran its first regular trains from Ashland to Covington.

Upon the refusal of the board to issue the bonds for the reason as alleged at the time that the road had not been completed in the stipulated time, this action was brought by the company for the use of certain citizens who had guaranteed a fund for the payment of the rights-of-way over the line proposed, and who were therefore the real parties in interest in the suit, to compel the issual of the bonds as provided in the ordinance. Various defenses were interposed to prevent recovery.

The act of the General Assembly upon the authority of which the vote was taken, and the subscription made, was entitled, "An act to amend the charter of the city of Augusta, in Bracken county," and it provided for an issual of the bonds of the city to the extent of $25,000, as subscription to the

capital stock of the Cincinnati & Southeastern Railway Company, which subscription had been approved by a prior vote of the electors of the city, and the third section of which is as follows: "In the event the said Cincinnati & Southeastern Railway Company fail to build their road, the city council may, at any time in the future, issue bonds of the city to the amount of $25,000, *   * in aid of any railway company that will construct a railroad through said city: Provided, a majority of the legal voters voting of said city shall vote in favor thereof at an election called and held for that purpose."

It is conceded by the appellants that long prior to the adoption of the ordinance of May 1, 1886, the enterprise of the Cincinnati & Southeastern Railway Company had fallen through, and that the conditions existed upon which the vote might be taken on the proposition to subscribe to the capital stock of any road proposing to run through the city of Augusta, but it is urged by demurrer to the petition and by plea that the act of the General Assembly authorizing the issual of the bonds upon the vote of the people therefor is unconstitutional in that its title is not expressive of the subject matter embraced in it; that the petition does not aver that any notice was given of the time for holding the election; that there was in fact no contract of subscription, the allegations of the petition stopping at the point where the vote merely is alleged to have been taken, and that vote, they say, does not amount to a contract of subscription, or control the discretion lodged in the mayor and councilmen to issue or not issue the bonds in question; that the private citizens who guaranteed the rights-of-way over the proposed route, and thus became entitled to the subscription, did so before the vote of the city was taken, and hence, their action was not induced by the vote, and the road was

not built on the pledge of this subscription to the road; that the present constitution took effect before the rendition of the judgment below, and the city is prohibited from taking stock in railroads; that the road was not completed within the time prescribed in the ordinance, and the delay was not caused by floods.

All the grounds relied on were deemed insufficient by the court below, and judgment resulted for the plaintiffs.

It is only necessary to refer without elaboration to the long line of decisions of this court construing section 37, art. 2 of the old constitution on the subject of valid titles to acts of the General Assembly, to dispose of the appellant's objection on that behalf.

The act in question affected the powers and duties of the governing body of the city, and pertained to the legitimate exercise of its functions. (See Phillips v. Covington & Cincinnati Bridge Company, 2 Met., 219; Swift v. City of Newport, 7 Bush, 37; City of Covington v. Voskotter, 80 Ky., 219; McArthur v. Nelson, 81 Ky., 67.)

It is also well settled that when the law fixes the time for holding an election, the notice otherwise required to be given may be dispensed with. (Toney v. Harris, 85 Ky., 475; Berry v. McCollough, 94 Ky., 247; Doores v. Varnon, 94 Ky., 507.)

The contention that a subsequent subscription depending on the discretion of the board was necessary before a liability to issue the bonds existed is not tenable. The duty of issuing the bonds was rendered imperative by the enabling act, and the vote taken in pursuance of it. By the very terms of the ordinance directing the vote, the adoption of which was an exercise of discretion, it is manifest that upon the vote being cast for the issual of the bonds the company became entitled to them upon the happening of certain

events. The conditions were carefully prescribed upon which the company was not to have them. They were not to be issued or delivered until the road was completed as a standard gauge, and a train was passed thereover from Ashland to Covington, or until a favorable vote was had, or unless the construction was finished within two years.

The necessary conclusion is that when these conditions and requirements were fulfilled the company became entitled to the bonds. Such is the natural meaning of the language of the act of the legislature and the ordinance of the city under which the vote was taken. The act of issuing the bonds was merely ministerial after the conditions upon which they were to issue had been complied with.

If the object of the vote was simply to empower the board to issue the bonds in their discretion, the authorities relied on by the appellants would be in point.

We do not, however, so construe the enabling act and the ordinance of the board. The act empowered the board not to subscribe, but to issue, bonds upon a vote resulting favorably on the question.

It would be singular if after a favorable vote under an ordinance providing that the bonds were not to issue until the road was built, that when the road was built the city was under no legal obligation to issue them. As said by counsel: "It would be a rare city council that would subscribe stock or issue bonds to a railroad already constructed, unless in obedience to some legal obligation incurred when the interest of the city required it."

It is true the words "may issue bonds" are used in the act, but this permissive language does not leave compliance optional. The provisions are to be deemed compulsory because it is the only rational construction to be given the words when looking to the intent and purposes of the enact-

ment, and the conduct of the parties.

Mr. Endlich in his work on Interpretation of Statutes, after a full discussion of this subject, says: "The result seems to be, that, when a public power for the public benefit is conferred in enabling terms, a duty is impliedly imposed to exercise it whenever the occasion arises." (Sec 312.)

As to the delay in completing the road, the proof is abundant that high water caused it. It is true as contended by counsel that there were no such floods during the period of construction as devastated the Ohio valley in 1847, or in 1883 and 1884, but the testimony is that for many months the water was more than fifty feet over some parts of the work, and for all practicable purposes prevented any progress as completely as if the noted flood of 1847 had revisited the valley.

The judgment is affirmed.