## MASON *v.* STATE.

Decided March 5, 1892.

1. *Perjury—Indictment—Matter of inducement.*
   An indictment for perjury committed in testifying before a grand jury concerning the destruction of a ballot-box used and the ballots cast at an election sufficiently charges that an election was held by the averment that "the ballot-box and ballots cast by the electors" of the township for presidential electors and for a member of congress were stolen and destroyed.

2. *Crimes against suffrage—Destruction of ballots.*
   It is a misdemeanor at common law to destroy the ballots cast at a public election, so long as they furnish evidence by which the right to enjoy the prerogatives of an office may be determined.

3. *Election—Judicial knowledge.*
   It is matter of judicial knowledge that in 1888 votes were cast for representatives in congress and for presidential electors at the same election in the same ballot-box and upon the same ballot.

4. *Presidential electors—Destruction of ballots—Jurisdiction.*
   The courts of the State have jurisdiction to punish the fraudulent destruction of ballots cast for electors of President and Vice President of the United States, notwithstanding a representative in congress is also voted for.

APPEAL from *Conway* Circuit Court.

J. G. WALLACE, Judge.

*Ratcliffe & Fletcher* for appellant.

1. The indictment fails to allege that an election was held. This was material. 54 Ark., 584; 1 Arch. Cr. Pl. & Pr., 291 ; 2 *id.,* p. 290; 11 Bush (Ky.), 169; 57 Vt., 86; 35 Ark., 327.

2. It was no crime to steal a ballot-box in Arkansas at that time. Acts 1891, p. 51, sec. 43, made it a crime. The facts that an election was held and that the act which the

S C—34

grand jury was investigating was a crime were necessary to make the false swearing a crime, and should have been alleged. 51 Ark., 138; 53 *id.*, 295; 54 *id.*, 584; 107 N. C., 832; 12 S. E. Rep., 319.

3. There is a variance in that it was alleged that *B. G.* White was one of the parties, and the proof was that Mason swore *Dr.* White was the man. There is no proof that they were the same man.

4. The indictment charges that the ballots were cast for presidential electors and member of congress, but it was admitted that no State officer was voted for. Presidential electors are State officers. 134 U. S., 377. This was a fatal variance.

5. No corrupt or wilful swearing falsely has been proven. To constitute perjury it must appear that the accused must have known the statement to be false. It is not sufficient that he did not know them to be true if he had reason to believe and did believe them to be true. 15 S. W. Rep., 118; 43 Fed. Rep., 67.

6. If only a member of congress was voted for, the taking of the ballot-box was a crime against the United States, and the State courts have no jurisdiction. The statutes of Arkansas make no provision for holding congressional elections in November. Mansf. Dig., sec. 2652; Rev. St. U. S., secs. 711, 5511, *et. seq.;* 62 Mich., 401; 92 Pa. St., 377; 134 U. S., 372; 7 Fed. Rep., 657; 2 Woods, 428.

*W. E. Atkinson*, Attorney General, and *Chas. T. Coleman* for appellee.

1. As to indictments for perjury, their requirements, etc., see 24 Ark., 591; Mansf. Dig., secs. 1705, 2106, 2107.

1. The indictment need not allege that a *legal* election was held. When the statute makes it the duty of officers to hold an election, it is presumed that they discharged their duty faithfully, and that a legal election was held. Paine on Elections, sec. 762; McCrary on Elections, sec. 424.

3. Any act tending to defeat an election is an offense and indictable at common law. 39 Am. Rep., 808.

4. It amply appears that B. G. White and Dr. White are identical. .

5. The State courts have concurrent jurisdiction to punish illegal voting for presidential electors. 134 U. S., 377. See 100 U. S., 371.

HEMINGWAY, J. The appellant was convicted of the crime of perjury, charged to have been committed in testifying before the grand jury of Conway county upon an examination before it with regard to the destruction of the ballot-box used and the ballots cast at Plummerville precinct in said county, at an election held on the 6th day of November, 1888, for presidential electors and a representative in congress. He is represented before us by careful, faithful and efficient counsel, who have presented by brief several grounds of alleged error, which we proceed to consider.

It is insisted, in the first place, that the indictment is defective, and that the court erred in overruling the demurrer thereto. The only defect to which our attention is directed is, that the indictment fails to charge that the ballot-box and ballots alleged to have been destroyed were those used and voted at an election actually held. It is said that this is a material averment, for that, unless an election was held, the destruction of the ballot-box and ballots was no crime, and therefore that there was nothing to authorize an investigation by the grand jury, or upon which to predicate a charge of perjury. It may be that the argument leads to the conclusion that false swearing before a grand jury can constitute perjury only when it relates to a crime actually committed ; but, be that as it may, we think the indictment sufficiently charges that an election was held. It sets out the testimony charged to have been false, and avers "that the ballot-box and ballots cast by the electors of said Howard township on the 6th day of November, 1888, for electors for President and Vice President of the United States and for a member of congress from the second congressional district for the State of Arkansas, were stolen and destroyed, and on the 6th day

1   Matter of inducement stated in indictment how.

of November, 1888, in the said county of Conway, and it became a material question before the grand jury," etc. The charge that the ballot-box and ballots cast by the electors on the 6th day of November, 1888, were destroyed, imports the holding of an election on that day; for ballots are " cast," according to the common understanding of the term, only at an election. The fact, though not directly alleged, is necessarily implied from the allegation; and necessary implication is equivalent to direct allegation in this part of the indictment. For it must be borne in mind that the fact is no part of the crime charged, but a part of that which only discloses a foundation for the crime ; and under the strict rules of common law pleading, as well as under the more liberal rules of the code, matters of inducement need not be set out in detail or by direct charge, but may be in general terms. 1 Bish., Cr. Pro., sec. 554; 2 *id.*, sec. 905 ; Mansf. Dig., sec. 2105.

The defect is not as to the matters charged, but as to the manner of charging it. No one could read the indictment and not gather from it that an election was actually held. So the objection is as to the form and not as to the substance of the charge. But the statute provides that " no indictment is insufficient, nor can the trial, judgment or other proceeding thereon be affected by any defect which does not tend to the prejudice of the substantial rights of the defendant on the merits." Mansf. Dig., sec. 2107. The defendant could not have misunderstood the matter charged or been misled concerning it by the informal nature of the averment. We could not hold the indictment insufficient in this particular without emasculating the statute and ignoring timely provisions, designed to remove from the law of criminal procedure the shackles of merely technical formularies, to the end that causes might progress to a determination upon their merits.

The former practice had outlived the day of its usefulness, and a reformed practice was established by the code as more conducive to the practical administration of justice.

It requires that the indictment should fully advise the defendant of the charge against him, and when this is accomplished, its demands are satisfied. The indictment in this case, though informal, advised the defendant fully of the charge he was called to answer, and we think the demurrer was properly overruled.

It is contended that the destruction of the ballot-box and ballots on the evening after the election constituted no crime against the laws of the State ; and that the investigation into it by the grand jury was without the scope of its powers. A statute was passed in 1891 to meet the supposed defect in the law; whether the act was made criminal by any prior written law of the State, we have not deemed it necessary to determine. For if it was a crime under the law of the State—either common law or statute— the grand jury was authorized to inquire into it, and perjury was predicable upon testimony delivered upon such inquiry.

An examination of the authorities discloses that divers acts concerning elections have been held offenses at common law as tending to disturb the due regulation and domestic order of the State. The argument upon which they rest is that there is nothing more essential to the public order than that the government be conducted by those chosen for it by the qualified voters, and that any act tending to prevent this is a public wrong which can be redressed only by a criminal prosecution. It seems to us sound, and has been approved wherever it was invoked, as far as our knowledge extends. *Com.* v. *McHale* 97 Penn. St., 397 ; S. C., 39 Am. Rep., 808, and cases cited; *Com.* v. *Silsbee*, 9 Mass., 417. So, repeating, interfering with elections and bribing voters have been punished as common law offenses. If they are such, with equal reason it should be held a misdemeanor at common law to destroy the ballot-box and ballots, so long as they furnish evidence by which the right to enjoy the prerogatives of an office may be determined. Their destruction might materially aid a defeated candidate to acquire and hold a public office in defiance of the expressed will of the voters,

2 Destruction of ballots a misdemeanor at common law.

by making impossible a correct ascertainment of the result of the election.  But that which prevents a correct ascertainment of the result tends as much to disturb the public order and do a public wrong as that which prevents, either by force or bribery, a free expression of the popular will. We therefore hold that they comprise public wrongs indictable at common law.

It is contended that the evidence fails to show that any election was held; but this fact was admitted upon the trial, and might have been found from the testimony of the defendant himself.

It is also contended that the alleged false statement concerned Dr. White, while the evidence of falsity relates to B. G. White, and that there is nothing to show the identity of Dr. and B. G. White.  It appears that throughout the trial the " Dr. White " named in the indictment was treated as the same person as B. G. White who testified; and the defendant, while testifying in his own behalf, acquiesced in this accepted fact.  We think the identity was sufficiently proved.

**3. Judicial knowledge as to elections.** It is contended that the defendant was charged with testifying falsely in an inquiry concerning the election for presidential electors and a representative in congress, while the proof relates to an inquiry concerning an election for representative only.  It was admitted that no state or county officer was voted for, but it was also admitted that an election was held for representative at the time and place charged in the indictment.  We judicially know that the day named was the day fixed by law for choosing electors, and that they were in fact chosen throughout the State generally on that day; and we know further that votes are cast for a representative and electors in the same ballot-box and upon the same ballot at the same election.  If, as is agreed, there was an election for representative, it was in law an election for electors; for the voters might have voted for electors, and whether they did or not was a fact to be ascertained from the ballot. If it be true that no vote was cast for any person for the office of an elector, that does not change the fact that such

votes might have been cast, nor affect or lessen the eviden-
tiary importance of the ballots cast in determining the choice
of electors ; and in either case the destruction of the ballots
might equally hinder or prevent the correct ascertainment
of the result. So we think the record shows that the elec-
tion held was for a representative in congress and for presi-
dential electors.

The result announced is conclusive of the next point
urged by the appellant, which is, that the crime of destroying
the ballot-box and ballots was one within the exclusive
cognizance of the federal government, and not subject to
examination by the tribunals of the State. The question is
directly ruled *In re* Green, 134 U. S., 377. Green had been
convicted and sentenced in a State court for fraudulently
voting at an election for electors and representative in con-
gress. He sued out a writ of *habeas corpus* from a United
States circuit court and was promptly discharged, on the
ground that the matter was one of which the federal courts
had exclusive jurisdiction. On an appeal to the Supreme
Court of the United States the judgment was reversed. The
court say : " Whether the State had concurrent power with
the United States to punish fraudulent voting for represen-
tatives in congress is not presented by the record before us.
It may be that it has. *Ex parte Siebold*, 100 U. S., 371.
But even if the State has no such power in regard to votes
for representatives in congress, it clearly has such power in
regard to votes for presidential electors, unaffected by any-
thing in the constitution and laws of the United States."

If the State can punish the fraudulent voting at a joint
election, *a fortiori* it may punish the fraudulent destruction
of the evidences of the vote taken.

The last ground urged for a reversal is, that the evidence
does not show that the defendant's statement before the
grand jury was corrupt and wilfully false. His statement
was that he saw three men in a house at Plummerville on
the night after the election build a fire and burn the ballot-
box and ballots. He detailed the circumstances, and stated

4. Jurisdiction
of State courts
over election of
presidential
electors.

that he was in a position to recognize the parties, and did recognize Dr. White, whom he knew well, as one of them; he detailed acts of Dr. White, said that he could see them plainly, and that he could not be mistaken.

The evidence shows that Dr. White was in Little Rock and not in Plummerville that night. The statement, so far as it concerned him, was therefore incorrect; and as the circumstances detailed by the defendant disclose a full opportunity for him to know the facts, it is not very probable that he was mistaken, although he might have been. Whether he was or was not, was a question peculiarly within the province of the jury to determine. They determined it against him, and we cannot say that the evidence did not warrant the conclusion. Having considered all the points presented by counsel, and finding no substantial error in the record, we cannot disturb the judgment below.

Affirm.