CASE 83—AGREED CASE—JUNE 23.

# Todd, Mayor, v. Johnson, County Clerk et al.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

1. VACANCY IN ELECTIVE OFFICE—HOW AND WHEN FILLED.—The provisions of section 2788 of the Kentucky Statutes, in so far as they prescribe how and by what process vacancies in municipal offices may be filled, are in conformity to and meet the requirements of section 160 of the Constitution; but when it comes to providing *a time* at which an election is to be held by the people to fill the vacancy for the unexpired term of an elective office, the provisions of section 152 of the Constitution must control.

2. CONSTITUTIONAL CONSTRUCTION—PRESIDENTIAL ELECTORS ARE STATE OFFICERS.—Presidential electors are "State officers," within the meaning of section 152 of the Constitution, which provides that if the unexpired term of an elective officer does not end at the next succeeding annual election at which either city, town, county, district or State officers are to be elected, and three months intervene before such election, the office shall be filled by appointment until such election, and then the vacancy filled by an election.

JOHN MARSHALL, FAIRLEIGH & STRAUS AND HENRY S. BARKER FOR APPELLANT.

1. The election in November, 1896, is not a "regular municipal election;" the only officials to be elected then who have any sort of connection with the city government are school trustees and they are in no sense city officers. The school board is an independent corporation; has a distinct government of its own; its acts are not the acts of the city and it sues and is sued in its own name; its members are elected under the Constitution and laws, in a different manner from all city officers—it depends upon the city government in only one particular—it derives its revenue therefrom.

.Todd, Mayor, v. Johnson, County Clerk et al.

2. Section 160 of the Constitution expressly gave to the legislature the power to provide how vacancies in all municipal offices may be filled, and the language therein is in no sense ambiguous and uncertain, and is not controlled or over-ridden or modified by the general expressions contained in section 152 of the Constitution.

3. But even under the provisions of section 152 the vacancy can only be filled at an election at which either city, town, county, district or State officers are to be elected. The proper construction of that section is that the particular vacancy to be filled must be filled at an election at which officers of the same class are to be elected. (Shelley v. McCulloch, 17 Ky. L. R., 59.)

4. Within the meaning of the Kentucky Constitution presidential electors are not "State officers;" they are officers or functionaries growing out of and created by the Federal Constitution; their election is provided for by that Constitution; they are nowhere referred to in the State Constitution; the State Constitution had no power to have created, abolished or in any way affected their functions; the whole subject is exclusively within the province of the Federal Constitution.


T. L. BURNETT, LYTLE BUCHANAN, ROBT. E. WOODS, PHELPS & THUM AND HUMPHREY & DAVIE FOR APPELLEES.

1. Presidential electors are "State officers;" they are elected by a vote of the people of the State for the purpose of casting the vote of the State in the Electoral College; the State laws prescribe their duties and provide for their compensation. (*In re* Green, 134 U. S., 379; McPherson v. Blacker, 146 U. S., 35; Mason v. State, 55 Ark., 535; McPherson v. Blacker, 92 Mich., 390.)

2. There are also to be elected in the city of Louisville in November, 1896, city school trustees, they being unquestionably city officers; and in providing for their election the charter designates the election at which they are to be elected a "regular municipal election." (Sec. 2949 Ky. Stats.)

3. Where the Constitution provides how a thing shall be done, and directs the legislature to so enact, it is not within the power of the legislature to provide a different mode. (Lowe v. Com., 3 Met., 237; Williams v. Com., 79 Ky., 42.)

4. The provision of section 148 of the Constitution that no officer of any city, town, or county, except members of the city council, shall be elected in the same year in which congressmen are elected, applies only to *regular* elections for full terms of the officers of the classes named. (Berry v. McCulloch, 94 Ky., 247; Shelley v. McCulloch, 17 Ky. Law Rep., 59.)

ALFRED SELLIGMAN FOR RICHIE, COUNTY JUDGE.

1. The vacancy having been filled more than three months before an election is to occur, at which city, town, district or State officers are to be elected, the appointment fills the office only until the November election, 1896, when the vacancy must be filled by election for the remainder of the term. (Constitution of Kentucky, Sec. 152.)

2. The provisions of section 148 of the Constitution forbidding the election of town and county officers, except members of municipal boards, in the same year representatives in Congress are to be elected, applies only to regular elections for full terms, and not elections to fill vacancies. (Shelley v. McCulloch, 17 Ky. Law Rep., 59.)

3. Presidential electors are "State officers," and are so recognized by the Federal Constitution, in which Congress is given no power over their choice, no right to fix their qualifications or the method of their selection. (In re Green, 134 U. S., 389; McPherson v. Blacker, 146 U. S., 135.)

4. School trustees are municipal or district officers who are to be elected at the November election, 1896, within a district co-extensive with that from which the mayor of the city of Louisville is elected.

5. The intention of the framers of the Constitution and the legislators with reference to the filling of vacancies, manifestly was that the complicated election machinery should not be put into operation for the purpose of electing a single officer, but that when such machinery was to be in operation for other purposes, the vacancy should be filled by election.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The death of Henry S. Tyler in January, 1896, caused a vacancy in the office of mayor of the city of Louisville, and the appellant, George D. Todd, was in due time, and as provided by statute, chosen mayor *pro tempore* by the general council.

Whether this temporary election by the council was to fill out the entire unexpired term of Tyler, who had been elected in November, 1893, for four years, or was to provide

an incumbent only until an election by the people in November, 1896, is the sole question presented on this appeal.

The sections of the Constitution supposed to affect the question are as follows: .

"Section 152.. Except as otherwise provided in this Constitution, vacancies in all elective offices shall be filled by election or appointment, as follows: If the unexpired term will end at the next succeeding annual election at which either city, town, county, district or State officers are to be elected, the office shall be filled by appointment for the remainder of the term. If the unexpired term will not end at the next succeeding annual election at which either city, town, county, district or State officers are to be elected, and if three months intervene before said succeeding election at which either city, town, county, district or State officers are to be elected, the office shall be filled by appointment until said election, and then said vacancy shall be filled by election for the remainder of the term." . . . The balance of the section is not involved here.

Section 160, after making certain provisions as to mayors or chief executives, police judges and members of legislative boards or councils of towns and cities, and providing for the election or appointment of other officers of towns and cities, concludes as follows: "The General Assembly shall prescribe the qualifications of all officers of towns and cities, the manner in and causes for which they may be removed from office, and how vacancies in such offices may be filled."

In obedience to the one or the other of these sections, or of both, the General Assembly, in the enactment of a charter for cities of the first class (section 2788, Kentucky Statutes), provided as follows: "When a vacancy shall take place in the office of mayor, a mayor *pro tempore*, shall be chosen by

the general council, in joint session, by the votes of a majority of the members elected. If the vacancy occur three months or more prior to a regular municipal election, a mayor shall be chosen for the unexpired term at the said election. If the vacancy occur within three months, the mayor *pro tempore* chosen by the general council shall serve until the regular election for mayor. It shall be the duty of the president of the board of aldermen to issue his proclamation for such joint session, to be held not less than ten nor more than twenty days after such vacancy shall take place. Until the vacancy is filled the president of the board of aldermen shall act as mayor."

As there is to be no "regular municipal election" in Louisville in November, 1896, the appellant contends that the vacancy can not be filled then, if the plain letter of the statute be observed; but without regard to the meaning to be given the words "regular municipal election," it seems clear to us that in so far as the statute provides "how" or by what process the vacancy is to be filled, namely, by the action of the general council in joint session and by the votes of a majority of the members elected, etc., it conforms to and meets the requirements of the provisions of section 160, giving the General Assembly the power to provide how such vacancy may be filled. But we think when it comes to providing the time at which an election is to be held by the people to fill the vacancy for the unexpired term of this officer, confessedly "elective" under the Constitution, we must look to section 152 of that instrument; and if the statute changes the time there fixed, so much the worse for the statute, the Constitution must control.

In considering this precise question in Shelly v. McCulloch, 17 Ky. Law Rep., 53, we reached the conclusion that

the power of the General Assembly was limited to providing how vacancies in elective offices of towns and cities might be filled temporarily, and until an election could be had by the people to fill the unexpired term as provided by section 152. We need not repeat here the reasons there given fully for our conclusions.

However, granting this, the appellant says there is to be, at the November election, 1896, no election "at which either city, town, county, district or State officers" are to be elected, and, therefore, the vacancy can not then be filled; and this brings us to consider the only serious question in this case. There will be elected at that time the electors of president and vice-president, and these, say counsel for the appellees, are "State officers;" and such they undoubtedly are.

The Kentucky Statutes, section 1514, provide for their election—which means an election by the people on a general ticket—on the Tuesday next after the first Monday in November, 1892, and on the same day in every fourth year thereafter. By section 1543 they are required to convene at the capitol of the State on the morning of the second Monday in January after their election, cast their votes and make due return thereof according to law; and for each day an elector so attends (section 1545) he is entitled to receive the same *per diem* and mileage as may at the time be allowed to a member of the General Assembly, to be paid out of the State treasury. He would seem, therefore, to be no more converted into a Federal officer, because he is lected by the people to cast his vote for a presidential candidate, than a member of the General Assembly would be considered a Federal officer because, when elected, he casts his vote for a senator of the United States; for while the latter is sup-

posed to do more than that, he does that much, and his status as a State officer is not affected.

In *in re* Green, 134 U. S., 379, Mr. Justice Gray said: "By the Constitution of the United States the electors for the president and vice-president in each State are appointed by the State, in such manner as its legislature may direct. . . . (Constitution, article 2, section 2.) The sole function of the presidential electors is to cast, certify and transmit the vote of the State for president and vice-president of the nation. Although the electors are appointed and act under and pursuant to the Constitution of the United States, they are no more officers or agents of the United States than are members of the State legislatures when acting as electors of federal senators, or the people of the States when acting as electors of representatives in Congress." And a conviction in the State court for illegal voting for electors at a regular State election was upheld.

So in McPherson v. Blacker, 146 U. S., 35, where the validity of a State law was attacked as repugnant to the Constitution of the United States because the law provided for the appointment of electors by district elections, the court upheld the State law on the ground that "the legislatures of the several States have exclusive power to direct the manner in which the electors of president and vice-president shall be appointed," and held that they might be appointed by the legislatures directly or by popular vote in districts or by general ticket. "In short," said the court, "the appointment and mode of appointment of electors belong exclusively to the States under the Constitution of the United States."

When framing the present Constitution, therefore, its makers had before them the plain provisions of the statutes making these officers "State officers," not in some peculiar or

Todd, Mayor, v. Johnson, County Clerk et al.

qualified sense, but in every conceivable sense, Congress having no control over their election or appointment, but being empowered merely to determine the time when they should be chosen; and they had before them, if that were needed, the decisions of the Supreme Court to this effect.

Why they should be held, therefore, to have intended that the words "State officers," in section 152, should not include these electors—these particular State officers—we can not conceive.

It is said, however, that these officers are not named in the Constitution. This is true, and for the best of reasons. It would have been a wholly useless thing, unless indeed it had been thought desirable to fix permanently the mode of electing such officers. The technical rule of construction which would confine the words "city, town, county, district or State officers" to those officers who had been mentioned in the Constitution, if adopted, would not only override the literal construction of the section, which undeniably includes these electors, but would also set at defiance the well-settled constitutional policy of our State since the abrogation in 1850 of the old Constitution of 1799. And that policy is to refer to the people—the source of all governmental power—the right of filling the offices of their creation with incumbents of their own selection.

The only excuse for the appointment of any officer made elective under the law is founded on the emergency of the public business, and when by death, removal, resignation or otherwise an elective office is made vacant, the policy of the law is to give to the people a chance to fill it as soon as practicable.

"The great object in the change in the system," said this court in Speed, &c. v. Crawford, 3 Met., 207, and which is

emphasized in the well-considered case of Toney v. Harris, 85 Ky., 473, was to refer to the people the choice of their officers of all grades and classes, whether State, district, county, city or town offices. That choice was to be made through the instrumentality of an election.

In Berry v. McCullough, 94 Ky., 247, we had under consideration section 148 of the Constitution in so far as it prohibited the election of city, town or county officers in the same year in which members of Congress are elected. And it was contended that a vacancy in the office of coroner of Jefferson county could not be filled at the election of county officers in 1892. We held that the adoption of such a construction "would stretch the appointive term very far beyond what was even intended or provided for under either the old or the new Constitution," and "construed the prohibition to apply to regular elections only."

The framers of the Constitution were not ignorant of this policy, and they must be supposed to have intended to embrace in the comprehensive language used in the section, viz., city, town, county, district or State officers, all the officers of these divisions and subdivisions, from the highest to the lowest, which were then electible by the people, or which, under any future law, might become so; and to have intended that the occasion of any such election must furnish also the occasion for filling vacancies in any elective office.

It will be observed that the vacancy is to be filled at the "next succeeding *annual* election at which," etc.

The use of the word "annual" is not without significance. It carries with it the idea of an annually recurring election, and one which must, under the scheme devised in the Constitution, recur in every November for all time.

The construction we have adopted gives at least some

Todd, Mayor, v. Johnson, County Clerk et al.

force to this word, for, including presidential elections, the occasions afforded for filling vacancies are largely increased, and elections for that purpose become at least more nearly "annual."   Indeed the use of this word gives strong color to the argument of one of our associates that upon the first Tuesday after the first Monday in November of every year the occasion arises for filling any vacancy in an elective office, if it occurs, of course, more than three months before, because no such November can occur when there will not be an election in some of the classes named.

As to odd years there would seem to be no question of the right to hold the elections to fill any vacancy, and in even years there will always either be an election for presidential electors, or a district election for a judge or judges of the Court of Appeals.

Waiving for the present the question of the electors, an illustration of this argument may be drawn from the present situation.

The regular election for a judge of this court from the Fifth district is to be held at approaching November election. There was a vacancy on the bench, caused in February of this year, by the death of our late associate, the lamented John R. Grace, and the argument is that it is most inconceivable to suppose the law makers intended that an election might be held for the purpose of electing a regular judge of this court, and yet not one held at the same regular election to fill a vacancy on the same bench. This view of the matter, however, is not suggested or argued by counsel, and need not, therefore, be considered further than to say that the use of these words," at which either city," etc., would seem to indicate that it was not at every succeeding November election that vacancies might be filled, but only when

those who were to be elected of the classes named, and hence unless an officer of that class is to be elected the vacancy can not be filled, even if there be an election for members of the lower house of Congress.

Be this as it may, we are convinced that within the meaning and intent of the Constitution vacancies in elective offices may be filled at the succeeding annual election at which electors for president and vice-president are to be elected.

It appears from the agreed facts and from the statute on the subject that a trustee for the Louisville common schools is to be elected in each legislative district of the city, and it is argued that this is an election at which "district officers" are to be elected within the meaning of section 152, and an election, too, in the same territory as that covered in the election for mayor.

This would *seem* to be true, but a determination of that question is not necessary in this case.

The judgment must be affirmed.

Judges Guffy and DuRelle dissenting.

Judge Landes not sitting.

Judge DuRelle delivered the following dissenting opinion in which Judge Guffy concurred.

Henry S. Tyler, mayor of Louisville, died on January 14, 1896, and the appellant, Geo. D. Todd, was thereupon elected mayor by the general council. The election was had under the provisions of the act for the government of cities of the first class, Kentucky statutes, section 2788, as follows: "When a vacancy shall take place in the office of mayor a mayor *pro tempore* shall be chosen by the general council in joint session by the vote of a majority of the members elected. If the vacancy occur three months or more prior to a

regular municipal election a mayor shall be chosen for the unexpired term at the said election. If the vacancy occur within three months the mayor *pro tempore* chosen by the general council shall serve until the regular election for mayor. It shall be the duty of the president of the board of aldermen to issue the proclamation for such joint session, to be held not less than ten nor more than twenty days after such vacancy shall take place. Until the vacancy is filled the president of the board of aldermen shall act as mayor."

The term for which Mayor Tyler was elected will expire in November, 1897, and the vacancy occurred more than three months before the November election, 1896. As there is to be no "regular municipal election" in November, 1896, as conceded by the opinion of the majority, the plain letter of the statute requires the election to be in November, 1897, unless the Constitution renders the statute inoperative as to the time of holding the election.

It is contended by appellees that the time of holding the election for mayor is controlled by section 152 of the Constitution, because of the fact that in November. 1896, there are to be elected school trustees in the city of Louisville and presidential electors throughout the State.

Section 152 of the Constitution provides: "Except as otherwise provided in this Constitution, vacancies in all elective offices shall be filled by election or appointment, as follows: "If the unexpired term will end at the next succeeding annual election, at which either city, town, county, district or State officers are to be elected, the office shall be filled by appointment for the remainder of the term. If the unexpired term will not end at the next succeeding annual election, at which either city, town, county, district or State officers are to be elected, and if three months intervene be-

fore said succeeding election, at which either city, town,
county, district or State officers are to be elected, the office
shall be filled by appointment until said election, and then
said vacancy shall be filled by election for the remainder of
the term."

The remainder of the section need not be considered here
except to note the somewhat striking fact that the "suc-
ceeding annual election" is referred to five times in this sec-
tion, and each time is followed by the qualifying phrase "at
which either city, town, county, district or State officers are
to be elected."

The questions involved in the case are reduced to these:
First, is it "otherwise provided in this Constitution" that
the office of mayor may be filled at a different time and in a
different manner to be prescribed by the General Assembly
from the time and manner prescribed by section 152? Sec-
ond, if the Constitution has not so otherwise provided—

*a.* Are school trustees either such city or such district
officers within the meaning of section 152 as to control the
time of the election of the mayor; and

*b.* Are presidential electors State officers within the mean-
ing of section 152 of the Constitution?

First, is there a provision otherwise in the Constitution?

Section 160, after making certain provisions as to the
mayor and other named officers of municipalities, provides:
"The General Assembly shall prescribe the qualification of
all officers of towns and cities, the manner in and causes for
which they may be removed from office, and how vacancies
in such offices may be filled."

This provision is not ambiguous. It delegates to the
legislature the control of the manner in which vacancies in
such offices may be filled. But it is insisted that this sec-

tion does not mean what it says, and that its specific provisions are controlled by the general expression contained in section 152, in spite of the saving clause at the beginning of that section, "except as otherwise provided in this Constitution."

It is further contended that in Shelly v. McCulloch, 17 Ky. Law Rep., 53, this court so decided. There was no statutory provision for filling a vacancy in the office of tax receiver involved in that case, and this court held that the provision of section 152 controlled in the absence of statutory provision. It is freely admitted, however, that the logic of that opinion goes further than the point expressly decided, and while in that case there has been no legislative construction of the meaning of the Constitution, and the court was not there confronted with the question whether an act of the General Assembly was unconstitutional, we do not think we should be justified in dissenting from the opinion of the majority. upon this ground alone.

But the remaining questions are a different matter. Leaving the statute out of the question, and assuming that it is unconstitutional and void, we have first the question whether school trustees are officers of cities or districts within the meaning of section 152; and in this connection it may be doubted whether they are officers at all in the strict meaning of the term, and whether they are not, in the view of the Constitution, what their name implies—trustees of their districts for the management of the educational interests thereof, having no other power or duty, and exercising no official functions. The act for the government of cities of the first class, after fully providing for all city officers. and for a complete system of city government, enters upon a distinct field, namely, that of education. All the statutory

provisions on the subject are under the distinct title of "Education," beginning with section 2949, Kentucky Statutes. At the very beginning the school board is created an independent corporation, with a distinct government of its own, responsible for its own acts, making its own contracts, suing and sued in its own name, and from time to time in litigation with the city. Its autonomy is perfect, and the only connection it has with the city government lies in the fact that the city is required to levy, collect and pay over to the school board an annual tax.

A consideration of that portion of the act for the government of cities of the first class relating to the school board leads us to the conclusion that they are not city officers within the meaning of the section of the Constitution under consideration. Their election, moreover, is put by the Constitution upon an entirely different footing from that of city, town, county, district or State officers. By section 155 of the Constitution it is provided that their election shall not be governed by the rules laid down in the Constitution for other elections; it is not required to be, and is not, in fact, held by secret ballot, but under the old *viva voce* method, and the votes are registered by the clerks of the election in separate books provided for that purpose. The very qualifications of the voters may, under the section referred to, be different from the constitutional qualifications for electors of State and other officers, and it is probably competent for the legislature to provide that women shall be entitled to vote at such an election. Their election need not be in November. Generally throughout the State it is held on the first Saturday in June. Both in the cities of the first class and in the county districts it is an annual election (Kentucky Statutes,

section 4434), and if the construction contended for by appellees on this point, and intimated at the close of the opinion of the majority, be correct, there is no year in which there is not an annual election at which district officers are to be elected. And this would lead logically to the conclusion that vacancies in county offices throughout the State would be required by section 152 to be filled at the annual June election, if that happened to be the next succeeding election before which three months intervened after the vacancy occurred, although this is forbidden by section 148, which requires all such officers to be elected in November. Moreover, the Constitution itself, in section 155, provides that section 152 "shall not apply to the election of school trustees and other common school district elections," thereby excluding those elections from considerati n in determining the meaning of section 152. Nor does this case come within the rule laid down in Shelly v. McCulloch, before referred to, for in order to cover the territory embraced in the city of Louisville, throughout which the mayor's election is held, it is necessary to combine seven separate school trustee districts, in each of which there is to be held a distinct and independent election for school trustees. There is no officer to be elected whose electoral district covers the territorial limits of the city. In Shelly v. McCulloch this court said: "Unless the territorial limits of the particular office to be filled were embraced by that of the nearest succeeding election, the rule might be different. For example, a vacancy in a State office would not be filled at a succeeding election in which only city officers were to be elected."

We think the true construction of section 152 probably is that a vacancy in an office can be filled only at an election at which officers of the like class are to be elected; but be that

as it may, the case of Shelly v. McCulloch does not decide the
point contended for by appellees that a number of inde-
pendent elections can be united to authorize the filling of a
vacancy in an office, the election district of which embraces
them all. We do not believe that an election in every con-
stable's district in the State would of itself authorize the
filling of a vacancy in a State office under section 152. In
our opinion the school trustee elections to be held in Louis-
ville in November, 1896, do not make that election one at
which either city, district or State officers are to be elected.

And this brings us to consider what is aptly termed in the
opinion of the majority "the only serious question in the
case." There will be elected in November, 1896, electors for
president and vice-president, and these, say the counsel for
appellees, are "State officers." In a limited sense they may
be so termed, and they have sometimes been described as
agents of the State to cast its vote for president and vice-
president. But are they officers of the State within the mean-
ing of section 152 of the Kentucky Constitution? They are
nowhere mentioned in that instrument. The act which
authorizes their election was not authorized thereby. The
Kentucky legislature derives its whole power in that regard
from the Constitution of the United States. "Each State
shall appoint, in such manner as the legislature thereof may
direct, a number of electors, equal to the whole number of
senators and representatives to which the State may be en-
titled in the Congress, but no senator or representative or
person holding an office of trust or profit under the United
States shall be appointed an elector."

The sole power of the State as to the electors is the power
of naming them in such a manner as the legislature may
direct. The act which provides the mode of selecting elect-

ors derives its authority not from the Kentucky Constitution but from the Constitution of the United States. When the Constitution of this State provided for the government of the Commonwealth, and the officers who were to administer that government, no officers were in contemplation except those who derived their official capacity from the State constitution, or the laws passed in pursuance thereto. The framers of the instrument and the people who voted to adopt it certainly did not contemplate officers deriving their official existence solely from the Federal Constitution. Electors perform but one function. That done, their power is exhausted. They have no possible power or duty to be exercised or performed in connection with the government created by the Constitution of Kentucky. They are not State officers within the meaning of section 152.

Much stress was laid by counsel for appellees upon the United States Supreme Court cases of *in re* Green, 134 U. S., 377, and McPherson v. Blacker, 146 U. S., 1, as holding that presidential electors were State officers, but the cases do not support that contention. The Green case decided that as the Federal Constitution had delegated the mode of selection to the State Legislature, and the legislature had determined that it should be done by election by the people, the State courts had jurisdiction to punish an offense committed at such election against the State election laws.

The court in that case said of the question whether the State had concurrent power with the United States to punish fraudulent voting for representative in Congress: "It may be that it has."

Neither that case nor the Blacker case anywhere decide that electors are State officers. The latter case arose from the Michigan legislature providing for the election of the

Todd, Mayor, v. Johnson, County Clerk et al.

electors by districts, and it was held that as the United States Constitution gave the power of determining the mode of selection to the State legislature, the legislature might exercise that power in any way it saw fit, and might provide for the selection of electors upon a State ticket, voted for throughout the State, or by elections by districts, or by election by the legislature. In this State down as late as 1824 presidential electors were selected by the legislature.

But in no just sense does either of the words officer or agent of the State describe the powers and duties of presidential electors. They are best described by the word used in the Constitution. They are electors, a body of men to each of whom, when appointed by the State, the Federal Constitution gives the power to cast, not the vote of the State, but his own vote for president and vice-president. It may be conceded that when the State legislature provides for their appointment by a vote of the people, under the power given by the Federal Constitution, that election is held under the power and subject to the control of the State, and frauds in its conduct may be punished by the State laws. "In short," as said in the Blacker case, "the appointment and mode of appointment of electors belong exclusively to the States under the Constitution of the United States. They are, as remarked by Justice Gray in *in re* Green, 134 U. S., 377-379, 'no more officers or agents of the United States than are the members of the State legislature when acting as electors of Federal senators, or the people of the States when acting as the electors of representatives in Congress.' "

On the other hand it may be said with equal truth that when appointed and exercising their only power they are no more officers or agents of the State than are the free electors of Kentucky when, under the section of the Kentucky Con-

stitution, they cast their votes for governor of the Commonwealth. They are independent electors. "As originally adopted and as it now exists, it was supposed that the body of electors interposed between the State legislature and the presidential office would exercise a reasonable independence and fair judgment in the selection of the chief executive of the national government, and that thus the evil of a president selected by immediate popular suffrage on the one side, and the opposite evil of an election by the direct vote of the States in their legislative bodies on the other, would both be avoided." (Miller on Constitutional Law, 149; Rawle on Constitution, 55; Story on Constitution, section 1473; The Federalist, No. 68.)

It is true that in practice they have come to be mere "puppets, selected under a moral restraint to vote for some particular person who represents the preference of the appointing power, whether that was the legislature or the more popular suffrage by which the legislature itself was elected." (*Ibid*, page 149.)

But their power under the Constitution still remains, and we can not concede that they have ceased to be independent electors because they have in practice ceased to act independently, or that they have become mere officers or agents of the State, charged with any official power or duty to register the will of the majority of the voters in the election of president and vice-president because, under the moral restraint referred to, they have come to act as if they were.

In casting their votes for president and vice-president they do not act as representatives of the States, but, if representatives at all, they represent the people of the United States in the electoral college. They do not cast the vote of the State, but their own votes as electors.

"The Constitution," says Chancellor Kent, 1 Kent, 275, "from an enlightened view of all the difficulties that attend the subject, has not thought it safe or prudent to refer the election of president directly and immediately to the people, but it has confided the power to a small body of electors appointed in each State under the direction of the legislature."

It is only in the event that the electoral college fails to elect, and the election is thereby thrown into the house of representatives that the States are represented in voting for a president, or the votes of the States as States are cast. In our judgment electors are not officers within the meaning of the Kentucky Constitution.

So far as the intent of the Constitutional Convention can be shown by the debates which took place among the members, it can be demonstrated that that body was influenced by a strong desire to separate, as far as possible, Federal elections from those of the State, through fear of Federal interference, but we do not attach much importance to arguments drawn from such evidence. We base our views upon the language which the framers of the Constitution used, and the sense in which the words must have been understood, not only by the members of the convention but by the people by whose suffrages the instrument was made the Constitution of Kentucky. To say that the overwhelming majority of the voters of Kentucky understand an election for presidential electors to be a Federal election, and not an election of State officers, is to understate the proposition. The percentage of the people who understand or think of it otherwise is infinitesimal, and it is the understanding of the people who voted for the adoption of the instrument which should control in its construction. This canon of constitutional construction is too well settled to require the citation

Todd, Mayor, v. Johnson, County Clerk et al.

of authority. Nor can we concur in the conclusion of the majority that the election of a judge of the Court of Appeals in another district is an annual election at which a vacancy in the office of mayor of the city of Louisville can be filled. The conclusion of the majority completely nullifies the qualifying words of the phrase "succeeding annual election, at which either city, town, county, district or State officers are to be elected," which, with painful particularity and emphasis, are reiterated no less than five times in section 152; and the policy of the adoption of the Constitution of 1850 should have nothing to do with the construction of the presen Constitution.

It must be assumed that the new Constitution was intended to effect a change of policy in every respect in which the language used indicates a different purpose from that used in the former instrument. Constitutional conventions are not held nor are Constitutions adopted for the purpose of perpetuating governmental policies, but for the purpose of changing them. A new Constitution is a new departure; and so the policy of the Constitution of 1850, to refer all matters to the vote of the people as quickly as possible, can have no place in the construction of the language of section 152 of the present Constitution, which indicates in five separate places an intention to alter or qualify that policy.

In our opinion it was a matter of little importance whether the Constitution should fix the time of filling the vacancy in one year or another, but we deem it of great importance that the correct rule of constitutional construction be adopted by this court.