## UNITED STATES v. BURROUGHS et al.
### No. 5653.

Court of Appeals of the District of Columbia.
Argued Oct. 31, 1932.
Decided May 15, 1933.

VAN ORSDEL, Associated Justice, dissenting.

Leo A. Rover, U. S. Atty., and John J. Wilson, James R. Kirkland, and Roger Robb, Asst. U. S. Attys., all of Washington, D. C.

Robert H. McNeill and Levi H. David, both of Washington, D. C., and H. Woodward Winburn, of Greensboro, N. C., for appellees.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice. An appeal by the United States from an order of the Supreme Court of the District of Columbia sustaining a demurrer to an indictment charging a violation of the Federal Corrupt Practices Act of February 28, 1925 (chapter 368, title 3, § 301 et seq. 43 Stat. 1053, 1070), incorporated in the U. S. Code as § 241 et seq. c. 8, title 2 (2 USCA § 241 et seq.).

The pertinent provisions of the act as set forth in title 2, U. S. Code (2 USCA), read as follows:

"Section 241. * * * (c) The term 'political committee' includes any committee, association, or organization which accepts contributions or makes expenditures for the purpose of influencing or attempting to influence the election of candidates or presidential and vice presidential electors (1) in two or more States, or (2) whether or not in more than one State if such committee, association, or organization (other than a duly organized State or local committee of a political party) is a branch or subsidiary of a national committee, association, or organization.

"§ 242. *Chairman and treasurer of political committee; duties as to contributions; accounts and receipts.* (a) Every political

committee shall have a chairman and a treasurer. No contribution shall be accepted, and no expenditure made, by or on behalf of a political committee for the purpose of influencing an election until such chairman and treasurer have been chosen.

"(b) It shall be the duty of the treasurer of a political committee to keep a detailed and exact account of—

"(1) All contributions made to or for such committee;

"(2) The name and address of every person making any such contribution, and the date thereof;

"(3) All expenditures made by or on behalf of such committee; and

"(4) The name and address of every person to whom any such expenditure is made, and the date thereof.

"(c) It shall be the duty of the treasurer to obtain and keep a receipted bill, stating the particulars, for every expenditure by or on behalf of a political committee exceeding $10 in amount. The treasurer shall preserve all receipted bills and accounts required to be kept by this section for a period of at least two years from the date of the filing of the statement containing such items.

"§ 243. *Accounts of contributions received.* Every person who receives a contribution for a political committee shall, on demand of the treasurer, and in any event within five days after the receipt of such contribution, render to the treasurer a detailed account thereof, including the name and address of the person making such contribution, and the date on which received.

"§ 244. *Statements by treasurer filed with Clerk of House of Representatives.* (a) The treasurer of a political committee shall file with the Clerk between the 1st and 10th days of March, June, and September in each year, and also between the 10th and 15th days, and on the 5th day, next preceding the date on which a general election is to be held, at which candidates are to be elected in two or more States, and also on the 1st day of January, a statement containing, complete as of the day next preceding the date of filing—

"(1) The name and address of each person who has made a contribution to or for such committee in one or more items of the aggregate amount or value, within the calendar year, of $100 or more, together with the amount and date of such contribution;

"(2) The total sum of the contributions made to or for such committee during the calendar year and not stated under paragraph (1);

"(3) The total sum of all contributions made to or for such committee during the calendar year;

"(4) The name and address of each person to whom an expenditure in one or more items of the aggregate amount or value, within the calendar year, of $10 or more has been made by or on behalf of such committee, and the amount, date, and purpose of such expenditure;

"(5) The total sum of all expenditures made by or on behalf of such committee during the calendar year and not stated under paragraph (4);

"(6) The total sum of expenditures made by or on behalf of such committee during the calendar year.

"(b) The statements required to be filed by subdivision (a) shall be cumulative during the calendar year to which they relate, but where there has been no change in an item reported in a previous statement only the amount need be carried forward.

"(c) The statement filed on the 1st day of January shall cover the preceding calendar year. ° * °

"§ 252. *General penalties for violations.* (a) Any person who violates any of the foregoing provisions of this chapter, except those for which a specific penalty is imposed by section 208 of Title 18, and section 251 of this title, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"(b) Any person who willfully violates any of the foregoing provisions of this chapter, except those for which a specific penalty is imposed by section 208 of Title 18, and section 251 of this title, shall be fined not more than $10,000 and imprisoned not more than two years."

The appellees, Ada L. Burroughs and James Cannon, Jr., were indicted by a grand jury of the District of Columbia for an alleged violation of section 244 of the foregoing act.

The indictment is in ten counts. The first eight counts charge the defendants with violations of the act and the last two counts charge them with conspiracy to violate the same. In the first, third, fifth, and seventh counts the charge is made that the defendants willfully violated the statute. In the second, fourth, sixth, and eighth counts it is not charged that the offense was willfully committed. In the first conspiracy count the charge is made that the offense was willfully committed. In the second of these counts the word "willfully" is omitted from the charge.

We shall take the first and second counts as illustrative of the first eight counts.

The first count charges that Burroughs from July 22, 1928, to March 16, 1929, was the treasurer of a certain political committee which then accepted contributions and made expenditures for the purpose of influencing and attempting to influence the election of presidential and vice presidential electors in two states; that at divers times during that period various contributions of money were made by one E. C. Jameson for said political committee, aggregating the sum of $58,000; that it thereafter, and during said period of time, to wit, between the 10th and 15th days next preceding November 6, 1928, the date on which a general election was held at which candidates and presidential and vice presidential electors were elected in the several states of the United States, became and was the lawful duty of said Burroughs, as such treasurer of said political committee, to file with the Clerk of the House of Representatives of the United States a statement, complete as of the day next preceding the date of the filing thereof, if it should be filed, containing the name and address of said E. C. Jameson, the person who made said contributions for said political committee as aforesaid, together with the amount and date of each of said contributions. The indictment further alleges that during said period of time, and while she was treasurer of said political committee, said Burroughs unlawfully and feloniously did willfully violate section 244 of chapter 8 of title 2 of the United States Code aforesaid, by then and there unlawfully and feloniously willfully failing to file with said Clerk, to wit, in said District of Columbia, any such statement, or any statement whatever, pertaining to said contribution, containing any such information; and that at and within the District of Columbia the appellee Cannon during said period of time, well knowing all the premises aforesaid, unlawfully and feloniously did willfully aid, abet, and procure the commission of the above-described offense on the part of said Burroughs, and so was then and there a principal in the commission of that offense.

The second count of said indictment contained the same allegations of facts as those contained in the first count, except for the omission of the words "feloniously and willfully" therefrom, charging only that the failure of Burroughs to file said statement was "unlawfully" done. The count, however, charged that Cannon unlawfully did willfully aid and abet Burroughs in the commission of the offense.

The appellees filed a demurrer to the indictment upon the grounds, first, that the Federal Corrupt Practices Act and section 244 thereof were and are unconstitutional; and, second, that the indictment is insufficient to inform the accused of the nature and cause of the accusation against them and to afford due process of law as guaranteed by the Constitution of the United States.

The demurrer was submitted to the lower court and was sustained upon the second of the grounds therein set out.

The United States thereupon appealed from that decision to this court. The appellees then filed a motion in this court to dismiss the appeal upon the ground that under the Criminal Appeals Act (18 U. S. C. § 682 [18 USCA § 682]) the appeal should have been taken directly to the Supreme Court of the United States, and consequently that this court was without jurisdiction to entertain it. However, in answer to interrogatories certified by us to the United States Supreme Court, this court was instructed that under section 935, D. C. Code, we possess jurisdiction over the several issues presented by the appeal. United States v. Ada L. Burroughs and James Cannon, Jr., 53 S. Ct. 574, 77 L. Ed. ——, Supreme Court of the United States, decided April 10, 1933.

The appellees contend that the sections of the Federal Corrupt Practices Act relating to presidential electors, upon which the indictment is based, are unconstitutional for the reason that such provisions attempt to regulate the political activities pertaining to the appointment of the electors, whereas the Constitution confers upon the state legislatures the exclusive power of appointing presidential electors, together with authority over all acts relating thereto except the time of choosing such electors. The appellees contend that there is no inherent or implied power in Congress to regulate the appointment of such electors or any other proceedings relating to them. In support of these propositions appellees cite McPherson v. Blacker, 146 U. S. 1, 13 S. Ct. 3, 36 L. Ed. 869; In re Green, 134 U. S. 377, 10 S. Ct. 586, 33 L. Ed. 951; Todd v. Johnson, 99 Ky. 548, 36 S. W. 987, 33 L. R. A. 399; Donelan v. Bird, 118 Ky. 178, 80 S. W. 796; Mason v. State, 55 Ark. 529, 18 S. W. 827; United States v. United States Brewers' Association (D. C.) 239 F. 163; In re Opinion of the Justices (1919) 118 Me. 552, 107 A. 705, 5 A. L. R. 1407; In re Opinion of the Justices (1921) 80 N. H. 595, 113 A. 293; Newberry v. United States, 256 U. S. 232, 41 S. Ct. 469, 65 L. Ed. 913.

We do not think that the decision of the present case depends upon the propositions advanced by appellees, inasmuch as section 244, supra, under which the indictment in this case is brought, does not attempt to interfere in any manner with the appointment of presidential electors, nor to control the official conduct or proceedings of such electors when appointed. The section does no more than provide that, in case of the voluntary organization of political committees which accept contributions or make expenditures for the purpose of influencing or attempting to influence the election of presidential and vice presidential electors, it shall be necessary that a public statement be made in a prescribed manner showing the amount of money received and expended by such committee for such purpose. No attempt is thereby made to prescribe any penalty for the commission or omission of any act upon the part of the presidential electors themselves, nor to impose any duty upon them. Nor does the act undertake to regulate the action or proceedings of such committees in respect to the collection or distribution of funds nor any other activity designed to aid in electing or defeating any presidential electors. The section simply requires that an account of such collections and distributions shall be made public. The national importance of such publicity is obvious. It should be remembered that the duty rests upon the Senate and House of Representatives to aid in counting the electoral votes, and also a contingent duty, which is potentially present in the election of every President, namely, the ultimate power reposed in the House of Representatives to elect the President, and the power reserved in the Senate to elect the Vice President, in the event of certain contingencies prescribed by the twelfth Amendment to the Constitution.

The constitutional authority for the enactment by Congress of such legislation as is herein involved is derived from article 1, § 8, cl. 18, of the Constitution, sometimes called the "implied power clause" or the "elastic clause," which reads as follows: "The Congress shall have Power * * * To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

In Re Yarbrough, 110 U. S. 651, 666, 4 S. Ct. 152, 155, 28 L. Ed. 274, Mr. Justice Miller, speaking for the court, said: "That a government whose essential character is re-publican, whose executive head and legislative body are both elective, whose most numerous and powerful branch of the legislature is elected by the people directly, has no power by appropriate laws to secure this election from the influence of violence, of corruption, and of fraud, is a proposition so startling as to arrest attention and demand the gravest consideration. * * * The proposition that it has no such power is supported by the old argument often heard, often repeated, and in this court never assented to, that when a question of the power of congress arises the advocate of the power must be able to place his finger on words which expressly grant it. * * * It destroys at one blow, in construing the constitution of the United States, the doctrine universally applied to all instruments of writing, that what is implied is as much a part of the instrument as what is expressed. This principle, in its application to the constitution of the United States, more than to almost any other writing, is a necessity, by reason of the inherent inability to put into words all derivative powers,—a difficulty which the instrument itself recognizes by conferring on congress the authority to pass all laws necessary and proper to carry into execution the powers expressly granted, and all other powers vested in the government or any branch of it by the constitution. Article 1, § 8, cl. 18."

In Fairbank v. United States, 181 U. S. 283, 287, 21 S. Ct. 648, 650, 45 L. Ed. 862, the court said: "We proceed upon the rule, often expressed in this court, that an act of Congress is to be accepted as constitutional, unless on examination it clearly appears to be in conflict with provisions of the Federal Constitution. * * * Further, by the last clause of § 8, art. 1, Congress is authorized 'to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or in any department, or officer thereof.' This, construed on the same principles, vests in Congress a wide range of discretion as to the means by which the powers granted are to be carried into execution."

In United States v. Gettysburg Electric Railway Co., 160 U. S. 668, 680, 16 S. Ct. 427, 429, 40 L. Ed. 576, the court said: "In examining an act of congress, it has been frequently said that every intendment is in favor of its constitutionality. Such act is presumed to be valid unless its invalidity is plain and apparent. No presumption of in-

validity can be indulged in. It must be shown clearly and unmistakably. This rule has been stated and followed by this court from the foundation of the government."

It is also contended by appellees that the indictment is fatally defective because it fails to allege that Burroughs as treasurer of the committee had knowledge of the Jameson contributions at any time named in the indictment. The lower court adopted this view and accordingly sustained the demurrer.

We are of the opinion that this was error. In the first, third, fifth, and seventh counts of the indictment it is stated that defendant Burroughs "unlawfully and feloniously did willfully violate" the requirements of the statute by "unlawfully and feloniously willfully failing to file" the required statement. These terms in the indictment sufficiently charge scienter on the part of the defendant.

In Potter v. United States, 155 U. S. 438, 446, 15 S. Ct. 144, 39 L. Ed. 214, the defendant was indicted under a criminal statute providing that "any officer, clerk, or agent of any national banking association who shall wilfully violate the provisions of an act entitled 'An act in reference to certifying checks by national banks,' * * * shall be deemed guilty of a misdemeanor, * * *," the court, speaking of the word "willfully" when used in the act, said: "It implies on the part of the officer knowledge and a purpose to do wrong. Something more is required than an act of certification made in excess of the actual deposit, but in ignorance of that fact, or without any purpose to evade or disobey the mandates of the law. The significance of the word 'willful' in criminal statutes has been considered by this court. In Felton v. United States, 96 U. S. 699, 702 [24 L. Ed. 875], it was said: 'Doing or omitting to do a thing knowingly and willfully implies, not only a knowledge of the thing, but a determination, with a bad intent, to do it, or to omit doing it. "The word 'willfully,'" says Chief Justice Shaw, "in the ordinary sense in which it is used in statutes, means, not merely 'voluntarily,' but with a bad purpose." (Com. v. Kneeland), 20 Pick. [Mass.] 220. "It is frequently understood," says Bishop, "as signifying an evil intent without justifiable excuse." 1 Bish. Cr. Law, § 428.' "

In Spurr v. United States, 174 U. S. 728, 19 S. Ct. 812, 43 L. Ed. 1150, which was a prosecution for "willfully violating" the Banking Act, the Supreme Court held that it was error for the trial court not to instruct the jury clearly that a "willful violation" was a violation with knowledge of the facts and a purpose to do wrong. In Foster v. United States (C. C. A.) 256 F. 207, which was a prosecution under Penal Code, § 225 (18 USCA § 355), making it embezzlement for a postmaster to fail to remit or fail or refuse to surrender money order funds on demand of an authorized agent of the Postmaster General, it was held that no specific intent was involved in the crime and that therefore it was enough for the indictment to allege that the defendant acted "willfully"; the word "willfully" implying knowledge and a purpose to do wrong. In Johnson v. United States (C. C. A.) 260 F. 783, 785, the court held that "willfully * * * means intentionally or knowingly."

In the light of these authorities, it is manifest that the allegation that Burroughs "did willfully violate" the statute by "willfully failing to file" a statement means that Burroughs acted with knowledge of the contributions and of her duty to report them.

In the second, fourth, sixth, and eighth counts of the indictment the term "willfully" does not appear; the charge being that the offense was "unlawfully" committed. However, the crime charged in these counts is purely statutory and the statute makes no mention therein of a specific intent. In such cases it is held that whether scienter is a necessary element of the crime, though not expressed in the statute, is a question of legislative intent to be answered by a construction of the statute, and that punishment for an illegal act done by one in ignorance of the facts making it illegal, is not necessarily contrary to due process of law. United States v. Balint, 258 U. S. 250, 42 S. Ct. 301, 66 L. Ed. 604; United States v. Behrman, 258 U. S. 280, 288, 42 S. Ct. 303, 66 L. Ed. 619.

The legislative purpose above referred to is clearly shown by sections 252 (a) and 252 (b), supra, whereby it is provided that any person who violates any of the provisions of the act shall be fined not more than $1,000 or imprisoned not more than one year, or both, whereas any person who willfully violates any of these provisions shall be fined not more than $10,000 and imprisoned not more than two years.

These provisions indicate that Congress used the word "willfully" in the act as importing scienter. The difference in penalties provided thereby for a willful violation of the act as compared with a violation not willful, indicates that the former must be knowingly and intentionally done.

On the other hand, the offense may be unlawfully but not willfully committed, as in case the treasurer fails to file the required statement solely through ignorance of the law, or through carelessness, inadvertence, neglect, or similar cause. It will always be presumed, however, that the treasurer possesses knowledge of contributions which are made to or for the committee and the distributions made by it in the course of its activities. But if the treasurer in any instance should have no knowledge of a contribution and could not have acquired knowledge thereof by the bona fide exercise of reasonable care and diligence in the performance of the duties of the office, the failure to file a statement of such contribution would be neither willful nor unlawful.

It follows that the counts of the indictment sufficiently charge an offense under the statute. They are drawn in the language of the statute and are sufficient to enable the accused to know the nature and the cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution of the same offense. In the case of statutory offenses such as this, this is sufficient.

The order of the lower court sustaining the demurrer to the indictment is therefore reversed and the cause is remanded for further proceedings not inconsistent herewith.

VAN ORSDEL, Associate Justice (dissenting).

I cannot agree with the opinion and judgment of the court in this case. The corpus delicti, or the body of the crime as laid in the statute, consists of a political committee, as defined therein, receiving funds, using them, and failing to make a detailed report thereof to the Clerk of the House of Representatives. The indictment fails to allege that any funds ever came into the possession of the committee or any person connected with the committee. Thus it appears that the first essential element leading to the possible commission of the crime is lacking, and without possession there can be no distribution; hence, in the absence of these two fundamental elements, the failure to report is not a crime, since to meet the requirements of the statute there is nothing to report. The essence of the crime is failing to report money that came into the possession of the committee, and from whom received, and funds paid out by the committee, and to whom such payments were made. In other words, the indictment fails to charge the crime defined in the statute, or any offense whatever. It is an elementary rule of criminal pleading that, until

the fact that the crime has been actually perpetrated and proved, in the manner alleged in the indictment, there can be no conviction.

Nowhere in the indictment is it charged that the treasurer of the committee had any knowledge of the existence of the funds in question. The mere allegation in the indictment that the money was paid for the committee without any averment as to whom it was paid, or that it ever reached the committee or any one connected with the committee, falls far short of charging the crime laid in the statute, or of imputing guilty knowledge to the officer required to report, or to any one else. Proof of the commission of the crime under this indictment, to sustain a conviction of defendants, is impossible, if the rules of evidence are observed. It undoubtedly is the law that, where a crime is laid in the indictment and the defendant is charged with its willful commission, guilty knowledge may be implied; but this implication will never arise where the indictment, as in this case, fails to set out the elements essential to charge a crime.